MICHAEL NEWDOW
*In pro per and Pro hac vice*[1]
PO BOX 233345
SACRAMENTO, CA  95823
Phone:          (916) 427-6669
E-mail:          NewdowLaw@gmail.com

ROBERT RITTER
DC BAR #414030
AHA – 1777 T STREET, NW
WASHINGTON, DC  20009
(202) 238-9088
BRitter@americanhumanist.org

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


Civil Action No.


---

## COMPLAINT

---


MICHAEL NEWDOW;
ELLERY SCHEMPP;
MEL LIPMAN;
DAN BARKER AND
          ANNIE-LAURIE GAYLOR;
ROBERT SHERMAN;
MARGARET DOWNEY;
AUGUST BERKSHIRE;
MARIE CASTLE;
STUART BECHMAN;
HERB SILVERMAN;
JASON TORPY;

---

[1] *Pro hac vice* application pending

Dockets.Justia.com

HARRY GREENBERGER;
KIRK HORNBECK;
JIM CORBETT;
CATHARINE LAMM;
RICHARD WINGROVE;
CHRISTOPHER ARNTZEN;
JOHN STOLTENBERG;
KATHERINE LACLAIR;
LOUIS ALTMAN;
PAUL CASE;
JERRY SCHIFFELBEIN;
ANNE, PHILIP AND JAY RICHARDSON;
DAN DUGAN;
ANNA MAE ANDREWS;
ELIZA SUTTON;
RICHARD RESSMAN;
"UNNAMED CHILDREN;"

THE AMERICAN HUMANIST ASSOCIATION
1777 T STREET, NW
WASHINGTON, DC  20009

THE FREEDOM FROM RELIGION FOUNDATION
304 W WASHINGTON AVE
MADISON WI 53703

MILITARY ASSOCIATION
        OF ATHEISTS & FREETHINKERS
519 SOMERVILLE AVE, PMB 200
SOMERVILLE, MA 02143

MINNESOTA ATHEISTS
522 20TH AVE. S.
MINNEAPOLIS, MN 554545-1325

ATHEISTS FOR HUMAN RIGHTS
5146 NEWTON AVE. N.
MINNEAPOLIS MN 55430

ATHEIST ALLIANCE INTERNATIONAL
1777 T STREET, NW
WASHINGTON, DC 20009-7125

ATHEISTS UNITED
4773 HOLLYWOOD BLVD.
LOS ANGELES, CA 90027-5333

NEW ORLEANS SECULAR HUMANIST ASSN
52 SAINT LOUIS STREET, APT. 3
NEW ORLEANS LA  70130

UNIVERSITY OF WASHINGTON
SECULAR STUDENT UNION
SAO BOX 210
SEATTLE, WA 98195-2238

SEATTLE ATHEISTS
11008 NE 140TH ST.
KIRKLAND, WA 98033

ATHEISTS OF FLORIDA
3614 S MANHATTAN AVE
TAMPA, FL 33629-8430

PLAINTIFFS,

v.

HON. JOHN ROBERTS, JR.
CHIEF JUSTICE OF THE U.S. SUPREME COURT
SUPREME COURT OF THE UNITED STATES
ONE FIRST STREET NE
WASHINGTON, DC 20543

PRESIDENTIAL INAUGURAL COMMITTEE ("PIC")
WASHINGTON, DC 20599

EMMETT BELIVEAU, EXECUTIVE DIRECTOR, PIC
WASHINGTON, DC 20599

JOINT CONGRESSIONAL COMMITTEE
        ON INAUGURAL CEREMONIES ("JCCIC")
UNITED STATES SENATE
331 HART SENATE OFFICE BUILDING
WASHINGTON, DC 20510

SENATOR DIANNE FEINSTEIN, CHAIRPERSON, JCCIC
UNITED STATES SENATE
331 HART SENATE OFFICE BUILDING
WASHINGTON, DC 20510

ARMED FORCES INAUGURAL COMMITTEE ("AFIC")
JOINT FORCE HEADQUARTERS - NATIONAL CAPITAL REGION
US ARMY MILITARY DISTRICT OF WASHINGTON
103 THIRD AVENUE - FORT LESLEY J. MCNAIR
WASHINGTON, DC 20319-5058

MAJOR GENERAL RICHARD J. ROWE JR., CHAIRPERSON, AFIC;
JOINT FORCE HEADQUARTERS - NATIONAL CAPITAL REGION
US ARMY MILITARY DISTRICT OF WASHINGTON
103 THIRD AVENUE - FORT LESLEY J. MCNAIR
WASHINGTON, DC 20319-5058

REV. RICK WARREN;
REV. JOE LOWERY;

DEFENDANTS.

---

## COMPLAINT

---

Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1. This is a civil action claiming violations of the First and Fifth Amendments of the Constitution of the United States of America. As such, this Court has jurisdiction under 28 U.S.C. § 1331.

2. This action is founded upon the Constitution of the United States of America. As such, this Court has jurisdiction over Defendants under 28 U.S.C. § 1346(a)(2).

3. This is a civil action claiming violations of 42 U.S.C. §§ 2000bb et seq. (Religious Freedom Restoration Act (RFRA)). As such, this Court has jurisdiction under 42 U.S.C. §§ 2000bb-1(c) and 28 U.S.C. § 1331.

4. This action seeks declaratory relief. As such, this Court has jurisdiction under 28 U.S.C. § 2201(a) and 28 U.S.C. § 2202.[2]

5. This action seeks injunctive relief. As such, this Court has jurisdiction under 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1343(a)(4).

6. This action is in the nature of mandamus, and seeks to compel those Defendants who are "officer[s] or employee[s] of the United States or any agency thereof" to perform their duties owed Plaintiffs under the terms of the First and Fifth Amendments of the Constitution of the United States. As such, this Court has jurisdiction under 28 U.S.C. § 1361.

7. Defendants PIC, JCCIC and AFIC all reside in this judicial district.[3] The events giving rise to this claim all have taken place, are taking place or will be taking place in this judicial district. Venue is therefore proper under 28 U.S.C. § 1391(b).

---

[2] It might be noted that Fed. R. Civ. P. Rule 57 states in pertinent part that, "The court may order a speedy hearing of a declaratory-judgment action."

[3] The remaining defendants may or may not reside in this judicial district.

**PARTIES**

### I.  Plaintiffs

8.  Plaintiff Michael Newdow is a citizen of the United States, a resident of the State of California, Reverend of the First Atheist Church of True Science ("FACTS"), a member of the Freedom From Religion Foundation ("FFRF") and the American Humanist Association ("AHA"), and an Atheist. He is awaiting responses from Senators Dianne Feinstein and Barbara Boxer to learn if he will be getting a ticket to the inauguration on January 20, 2009. If he does, he will attend the actual event. If he does not, he plans to view the ceremony via the large video displays being set up on the Capitol mall.

9.  Plaintiff Ellery Schempp is a citizen of the United States, a resident of the State of Massachusetts, a member of the Unitarian-Universalist Church, First Parish, in Bedford, Massachusetts, a member of the Freedom From Religion Foundation ("FFRF"), the American Humanist Association ("AHA"), the National Center for Science Education ("NCSE"),  Americans United for Separation of Church and State ("AUC&S"), the Secular Coalition for America ("SCA"), the Center for Naturalism, and the Skeptic Society, and a Secularist, Humanist and Atheist. He will view the inauguration at via cable television and on the Internet, in the company of friends, on January 20, 2009.

10. Plaintiff Mel Lipman is a citizen of the United States, a resident of the State of Florida, president of AHA, Vice President of the International Humanist and Ethical Union, a member of American Atheists ("AA") and FFRF and a Jewish Atheist, Humanist and Free-thinker. He plans to view the inauguration at home on television on January 20, 2009.

11. Plaintiffs Dan Barker and Annie-Laurie Gaylor are citizens of the United States, residents of the State of Wisconsin, co-Presidents of FFRF, and Atheists. They plan to view the inauguration at home on television on January 20, 2009.

12. Plaintiff Robert Sherman is a citizen of the United States, a resident of the State of Illinois, and an Atheist. He plans to view the inauguration on a big screen television in Washington, DC on January 20, 2009.

13. Plaintiff Margaret Downey is a citizen of the United States, a resident of the State of Pennsylvania, a member of AHA, FFRF, SCA, AA and AAI, and an Atheist. She plans to view the inauguration with a family on television on January 20, 2009.

14. Plaintiff August Berkshire is a citizen of the United States, a resident of the State of Minnesota, president of Minnesota Atheists, a member of AHA, FFRF and AAI, and an Atheist. He plans to view the inauguration at home on television on January 20, 2009.

15. Plaintiff Marie Castle is a citizen of the United States, a resident of the State of Minnesota, communications director of Atheists For Human Rights ("AFHR"), a member of FFRF and AA, and a "Valiant Atheist." She plans to view the inauguration with other AFHR members on a big-screen television on January 20, 2009.

16. Plaintiff Stuart Bechman is a citizen of the United States, a resident of the State of California, President of Atheist Alliance International ("AAI"), President of Atheists United ("AU"), a member of FFRF and AA, and an Atheist. He will not be viewing the inauguration because "I find the presence of religious authorities in the ceremony to be exceptionally offensive and a violation of my rights as a US citizen to expect our elected leaders to adhere to the First Amendment of our Constitution."

17. Plaintiff Herb Silverman is a citizen of the United States, a resident of the State of South Carolina, President of the Secular Coalition for America ("SCA"), a member of AHA and FFRF, and an Atheist. He plans to view the inauguration at home on television on January 20, 2009.

18. Plaintiff Jason Torpy is a citizen of the United States, a resident of the State of New York, President of the Military Association of Atheists & Freethinkers ("MAAF") and board member of AHA, graduate of West Point, Iraq War veteran and a Nontheist. He plans to view the inauguration with other Nontheists at a group event in New York City.

19. Secular Coalition for America ("SCA"), a member of AHA and FFRF, and an Atheist. He plans to view the inauguration at home on television on January 20, 2009.

20. Plaintiff Harry Greenberger is a citizen of the United States, a resident of the State of Louisiana, President of the New Orleans Secular Humanist Association ("NOSHA"), a member of AHA, FFRF and AA, and an Atheist. He plans to view the inauguration at home on television on January 20, 2009.

21. Plaintiff Kirk Hornbeck is a citizen of the United States, a resident of the State of Maryland, a member of FFRF and AHA, and an Atheist. He plans to view the inauguration on January 20, 2009, via the large video displays being set up on the Capitol mall.

22. Plaintiff Jim Corbett is a citizen of the United States, a resident of the State of Washington, a member of AHA and AA, and an Atheist and a humanist. He plans to view the inauguration at home on television on January 20, 2009.

23. Plaintiff Catharine Lamm is a citizen of the United States, a resident of the State of New Hampshire, a member of FFRF, and a Secular Humanist. She plans to view the inauguration at home on television on January 20, 2009.

24. Plaintiff Richard Wingrove is a citizen of the United States, a resident of the State of Virginia, a member of FFRF, and an Atheist. He plans to view the inauguration on January 20, 2009, via the large video displays being set up on the Capitol mall.

25. Plaintiff Christopher Arntzen is a citizen of the United States, a resident of the District of Columbia, a member of AHA and FFRF, and an Atheist. He plans to view the inauguration on January 20, 2009, via the large video displays being set up on the Capitol mall.

26. Plaintiff John Stoltenberg is a citizen of the United States, a resident of the State of Wisconsin, a member of AHA and FFRF, and a Freethinker/Atheist. He plans to view the inauguration at home on television on January 20, 2009.

27. Plaintiff Katherine LaClair is a citizen of the United States, a resident of the State of New Jersey, and a Humanist. She will be attending the actual inaugural ceremony on January 20, 2009.

28. Plaintiff Louis Altman is a citizen of the United States, a resident of the State of Illinois, a member of the Board of AHA, a member of FFRF, and an Atheist, a Humanist, a Freethinker and a nontheistic American. He will be watching the inaugural ceremony at home on television on January 20, 2009.

29. Plaintiff Paul Case is a citizen of the United States, a resident of the State of Washington, a member AA and Seattle Atheists ("SA"), and an Atheist. He will be watching the inaugural ceremony at home on television on January 20, 2009.

30. Plaintiff Jerry Schiffelbein is a citizen of the United States, a resident of the State of Washington, Treasurer of Seattle Atheists ("SA"), Vice President of Humanists of Washington, and a Secular Humanist, Atheist and Freethinker. He will be watching the inaugural ceremony at home on television on January 20, 2009.

31. Plaintiffs Anne M. Richardson, Philip I. Richardson, Jay R. Richardson are citizens of the United States, residents of the State of Virginia, members of Washington Area Secular Humanists ("WASH"), and Atheists. They will view the ceremony via the large video displays being set up on the Capitol mall.

32. Plaintiff Dan Dugan is a citizen of the United States, a resident of the State of California, and a secular Humanist. He will be watching the inaugural ceremony at home on television on January 20, 2009.

33. Plaintiff Anna Mae Andrews is a citizen of the United States, a resident of the State of California, a member of AHA and a Humanist and an Atheist. She will be watching the inaugural ceremony at home on television on January 20, 2009.

34. Plaintiff Eliza Sutton is a citizen of the United States, a resident of the State of Washington, a member of AHA, FFRF and Seattle Atheists, and an Atheist. She will be watching the inaugural ceremony at home on the Internet or listening on the radio on January 20, 2009.

35. Plaintiff Richard Ressman is a citizen of the United States, a resident of the State of California, and an "occasional-practicing Jew." He will be watching the inaugural ceremony at home on television on January 20, 2009.

36. Plaintiffs "Unnamed Children" are the children of one or more of the above-mentioned adult plaintiffs (and/or members of AHA and/or FFRF), who will be watching the inaugural exercises along with their parents.

37. Plaintiff American Humanist Association ("AHA") is dedicated to ensuring a voice for those with a positive, nontheistic outlook. Founded in 1941 and headquartered in Washington, D.C., its work is extended through more than 100 local chapters and affiliates across America. Humanism is a progressive philosophy of life that, without theism and other supernatural beliefs, affirms our ability and responsibility to lead ethical lives of personal fulfillment that aspire to the greater good of humanity. The mission of the American Humanist Association is to promote the spread of humanism, raise public awareness and acceptance of humanism and encourage the continued refinement of the humanist

philosophy. AHA has more than 10,000 members in every state as well as the District of Columbia.

38. Plaintiff Freedom From Religion Foundation ("FFRF") is a national association of Freethinkers (Atheists and Agnostics), established as a 501(c)(3) educational group in 1978, which works to protect its members by keeping church and state separate. The Foundation, based in Madison, Wisconsin, has members in every state as well as the District of Columbia. Current total membership is more than 13,000.

39. Plaintiff Minnesota Atheists ("MNA") is the oldest, largest, and most active Atheist organization in the state of Minnesota. It was founded in 1991 and is a 501(c)3 nonprofit educational organization. Its purposes are: to provide a community for Atheists; to educate the public about Atheism; and to promote separation of state and church.

40. Plaintiff Atheists for Human Rights ("AFHR") is a staunch advocate for religion-free government uninfluenced by sectarian religious beliefs, that supports an inclusive society that does not give preferential treatment to any religious group. It has membership throughout the United States, many of whom will be watching the inaugural events on the big screen TV at its headquarters in Minneapolis, Minnesota.

41. Plaintiff Atheist Alliance International ("AAI") is an umbrella group of over 60 Atheist and humanist organizations across the United States, founded in 1992 and dedicated to promoting the worldview of positive Atheism and pursuing the restoration of the First Amendment.

42. Plaintiff Atheists United ("AU") is the preeminent Atheist organization in southern California, founded in 1982 and dedicated to providing a community for Atheists and others with a reality-based worldview and fighting the societal stigmas and stereotypes about Atheism through education and advocacy.

43. Plaintiff New Orleans Secular Humanist Association ("NOSHA") is the only secular organization covering Southern Louisiana and the Mississippi Gulf coast, providing monthly meetings, quarterly newsletters, informative website and public access television programs. Without supernaturalism, its members celebrate reason and humanity.

44. Plaintiff University of Washington Secular Student Union ("UWSSU") was formed in the summer of 2006 to provide students at the University of Washington in Seattle, Washington, who are Atheist, Agnostic, and otherwise nonreligious students with a place to discuss their lack of faith, and to provide all students with a forum to discuss and debate general issues of religion and philosophy. The Secular Student Union is a student-created and student-run organization. Almost every major college and university campus across the nation has an organization that is similar to the Secular Student Union and members of these organizations communicate via the Internet, Facebook and other electronic media to share ideas and programs around their philosophical perspective. Members of the group include self-described Atheists, Agnostics, Freethinkers, and other non-theists perspectives.

45. Plaintiff Seattle Atheists ("SA") is a nonprofit educational corporation organized to develop and support the Atheist, Rationalist, secular Humanist, Agnostic, Skeptic and non-theist communities; to provide opportunities for socializing and friendship among these groups; to promote and defend their views; to protect the first amendment principle of state-church separation; to oppose any discrimination based upon religious conviction, particularly when it is directed at the non-religious; to expose the dangers of supernaturalism and superstition; to promote science; and to work with other organizations in pursuit of common goals.

46. Plaintiff Atheists of Florida ("AOF"), is a 501(c)(3) nonprofit, educational corporation founded to heighten public awareness about Atheism and to monitor state/church separation issues.

## II. Defendants

47. Defendant Hon. John Roberts, Jr., the Chief Justice of the United States, is the nation's highest judicial officer. He is being sued in his official and in his individual capacity.

48. Defendant Presidential Inaugural Committee ("PIC") is the quasi-governmental[4] "committee appointed by the President-elect to be in charge of the Presidential inaugural ceremony and functions and activities connected with the ceremony."[5]

49. Defendant Emmett Beliveau is the executive director of PIC.

50. Defendant Joint Congressional Committee on Inaugural Ceremonies ("JCCIC") is the committee established by S. Con. Res. 67, 110th Cong., 2d Sess., 154 Cong. Rec. 21, S820-21 (Feb 8, 2008) "authorized to utilize appropriate equipment and the services of appropriate personnel of departments and agencies of the Federal Government, under arrangements between the joint committee and the heads of the departments and agencies, in connection with the inaugural proceedings and ceremonies."

51. Defendant Dianne Feinstein is a United States Senator who is serving as chairperson of JCCIC.

52. Defendant Armed Forces Inaugural Committee ("AFIC") is "a joint service committee charged with coordinating all military ceremonial support for the presidential inaugural."[6]

53. Defendant Major General Richard J. Rowe Jr. is the Commander of AFIC.

---

[4] See 36 U.S.C. § 501 et seq. See, also, 69 Fed. Reg. (No. 193) 59775 (October 6, 2004) (to be codified at 11 C.F.R. pts. 104 & 110) ("The inaugural committee … receives special privileges in the District of Columbia beginning five days before and ending four days after the inaugural ceremony.")

[5] 36 U.S.C. § 501(1).

[6] As described at the AFIC website, accessed at http://www.afic.northcom.mil/about.html on December 20, 2008.

54. Defendant Rev. Rick Warren is a clergyman who has been chosen to provide the invocation at the upcoming presidential inaugural exercises.

55. Defendant Rev. Joe Lowery is a clergyman who has been chosen to provide the benediction at the upcoming presidential inaugural exercises.

## **INTRODUCTION**

56. The First Amendment of the United States Constitution states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof …"

57. The United States Supreme Court has extended the ambit of these words to include any governmental actor.[7]

58. In explaining the Establishment Clause, the Supreme Court has stated, "[t]he touchstone for our analysis is the principle that the 'First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion.'"[8] It is clearly not neutral when the government places "so help me God" in its oaths or sponsors prayers to God, knowing that some individuals believe that God does not exist.

59. The Supreme Court has similarly claimed that "The government may not … lend its power to one or the other side in controversies over religious authority or dogma."[9] By placing "so help me God" in its oaths and sponsoring prayers to God, government is lending its power to one side of perhaps the greatest religious controversy: God's existence or non-existence.

---

[7] "To be sure, the First Amendment is phrased as a restriction on Congress' legislative authority ... [but it] binds the Government as a whole, regardless of which branch is at work in a particular instance." Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 511 (1982) (Brennan, J., dissenting).
[8] McCreary County v. ACLU, 545 U.S. 844, 860 (2005) (citation omitted).
[9] Employment Div. v. Smith, 494 U.S. 872, 877 (1990).

60. The Supreme Court has stated that the Establishment Clause requires a "purpose" analysis, which "aims at preventing the relevant governmental decisionmaker ... from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters."[10] There can be no purpose for placing "so help me God" in an oath or sponsoring prayers to God, other than promoting the particular point of view that God exists.

61. The Supreme Court has looked at the "effects" of government activity, especially in terms of "endorsement" of any religious dogma, and agreed that "an important concern of the effects test is whether the symbolic union of church and state effected by the challenged governmental action is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices."[11] That the effect of placing "so help me God" in its oaths and sponsoring prayers to God has been perceived by adherents of Monotheism as an endorsement of their individual religious choices is unequivocal. A member of the Supreme Court, itself – joined by two of his colleagues – has used those very actions to contend that government may assist "the overwhelming majority of religious believers in being able to give God thanks and supplication *as a people,* and with respect to our national endeavors,"[12] and that "the Establishment clause ... permits the disregard of devout Atheists."[13]

62. The Supreme Court has continued, noting that "[t]he inquiry into this kind of effect must be conducted with particular care when many of the citizens perceiving the governmental message are children in their formative years."[14] Plaintiffs "Unnamed Children" are children in their formative years, who will watch as the government alters the sole constitutionally

---

[10] Corporation of Presiding Bishop v. Amos, 483 U.S. 327, 335 (1986).
[11] Grand Rapids School District v. Ball, 473 U.S. 373, 390 (1985).
[12] McCreary County v. ACLU, 545 U.S. 844, 900 (2005) (Scalia, J., dissenting).
[13] Id. at 893.
[14] Id.

prescribed oath by adding "so help me God" to it, and as the government gives Monotheistic clergy unique access to the grandest ceremony in our national existence solely for the purpose of praying to God.

63. Yet despite all of the foregoing, Defendant Roberts – who, as Chief Justice of the United States, embodies the rule of law and the devotion of our government to the United States Constitution more than any other individual – will (with no authority whatsoever) alter the text of that document to infuse the inaugural ceremony with purely religious dogma.

64. Furthermore, the remaining Defendants will bring to the inauguration of the President – the grandest ceremony in our national existence – two chaplains to extol the glory of God. This is the case even though the Supreme Court has specifically pronounced that "the religious liberty protected by the Constitution is abridged when the State affirmatively sponsors the particular religious practice of prayer."[15]

65. Plaintiffs are American "Humanists," "Freethinkers" and/or Atheists, who sincerely believe that there is no such thing as god, or God, or any supernatural force. On the contrary, under their belief system(s), "supernatural" is an oxymoron.

66. Although it has been written that "acknowledgements" of God "serve, in the only ways reasonably possible in our culture, the legitimate secular purposes of solemnizing public occasions, expressing confidence in the future, and encouraging the recognition of what is worthy of appreciation in society,"[16] Plaintiffs strongly disagree with this claim.

67. In fact, to Plaintiffs, such "acknowledgements" (much less endorsements) of God do not solemnize those occasions at all. On the contrary, they ridicule public occasions, making a mockery of the wonders of nature and of human achievement.

---

[15] <u>Santa Fe Independent School District v. Doe</u>, 530 U.S. 290, 313 (2000).
[16] <u>Lynch v. Donnelly</u>, 465 U.S. 668, 693 (1984) (O'Connor, J., concurring).

68. To Plaintiffs, such "acknowledgements" (much less endorsements) of God do not express confidence in the future. On the contrary, they serve to remind Plaintiffs of the most egregious past human conduct, where people have done such unfathomable acts as literally burning others alive, merely because their victims held different religious views.

69. "Acknowledgements" of God remind Plaintiffs of the myriad wars fought by those convinced that their religious "truths" justified intolerance, and of September 11, 2001, when a fanatic and his religious followers turned four of our airplanes into bombs, murdering 3,000 of our citizens … all in the name of God.

70. Nor do Plaintiffs find that "acknowledgements" of God encourage the recognition of what is worthy of appreciation in society. Rather, to Plaintiffs, such "acknowledgements" reflect a falsehood that readily leads to such views as those expressed by Hon. Leon Bazile (who wrote that antimiscegenation statutes were proper because "Almighty God ... did not intend for the races to mix"[17]), by Supreme Court Justice Joseph Bradley, who contended that women should not be lawyers because their "paramount destiny and mission ... are to fulfill the noble and benign offices of wife and mother,"[18] and by Rev. Raymund Harris (who claimed to "successfully prove, that the SLAVE-TRADE is perfectly consonant to ... Christian Law, as delineated to us in the Sacred Writings of the Word of God"[19]).

---

[17] Loving v. Virginia, 388 U.S. 1, 3 (1967) ("Almighty God created the races white, black, yellow, malay and red, and he placed them on separate continents. And but for the interference with his arrangement there would be no cause for such marriages. The fact that he separated the races shows that he did not intend for the races to mix." (quoting the trial judge, Hon. Leon Bazile)).

[18] Bradwell v. State, 83 U.S. 130, 141 (1873) (Bradley, J., concurring) ("The paramount destiny and mission of woman are to fulfill the noble and benign offices of wife and mother. This is the law of the Creator.").

[19] Harris R. *Scriptural researches on the licitness of the slave-trade, shewing its conformity with the principles of natural and revealed religion, delineated in the sacred writings of the word of God.* (John Stockdale: London, 1788 (reprinted by John Winter: Fredericktown, MD; 1790)) as provided in Early American Imprints, Series I, Evans, 1639-1800, No. 22555.

71. If the declarations of God's glory were meant merely as positive reflections of the Monotheistic views of believers, they would still violate the First Amendment's religion clauses. Plaintiffs, however, contend that the "real meaning" of these declarations goes far beyond that unconstitutional "benignity," for they contain an element analogous to the "real meaning" of the "separate but equal" laws of our nation's earlier history and tradition. Specifically, the "real meaning" is that Atheists are "so inferior and so degraded"[20] that their religious views warrant no respect.

72. That "real meaning" has been exhibited time and again in our past. Congress, itself, when it interlarded the Pledge of Allegiance with the words "under God" in 1954, specifically noted that it was acting "to deny ... Atheistic ... concepts."[21]

73. Along these same lines, Defendant Rev. Rick Warren has repeatedly asserted, "I could not vote for an Atheist because an Atheist says, 'I don't need God.'"[22]

74. It is well known that Defendant Roberts is a Catholic. In Catholicism, many similar examples of the "real meaning" of proclamations of God's glory and/or importance exist. For instance, in a relatively recent encyclical, the Pope spoke of how he had "frequently and with urgent insistence denounced the current trend to Atheism which is alarmingly on the increase."[23]

---

[20] Plessy v. Ferguson, 163 U.S. 537, 560 (1896) (Harlan, J., dissenting) ("What can more certainly arouse race hate, what more certainly create and perpetuate a feeling of distrust between these races, than state enactments which, in fact, proceed on the ground that colored citizens are so inferior and degraded that they cannot be allowed to sit in public coaches occupied by white citizens. That, as all will admit, is the real meaning of such legislation as was enacted in Louisiana.").

[21] H.R. 1693, 83rd Cong., 2d Sess., at 2).

[22] Tran, My-Thuan. *Warren: Character is key*. Los Angeles Times (August 18, 2008), p. B-1. Rev. Warren also made this claim on national television on the Larry King Show: "I couldn't vote for a person who is an Atheist." August 18, 2008. Accessed on December 25, 2008, at http://transcripts.cnn.com/TRANSCRIPTS/0808/18/lkl.01.html.

[23] Encyclical DIVINI REDEMPTORIS (On Atheistic Communism) of Pope Pius XI, dated March 19, 1937, and accessed at http://www.ewtn.com/library/encyc/p11divin.htm on December 27, 2008.

75. Perhaps most importantly, the "real meaning" is stated in the Holy Bible, which will be used during the inaugural ceremonies. That book calls anyone who is an Atheist a "fool,"[24] while further making the outlandish, degrading and insulting declarations that Atheists "are corrupt, ... have done abominable works, [and] there is none that doeth good."[25]

76. It doesn't end there. That book decrees that Plaintiffs "shall surely be put to death!"[26]

77. According to defendant PIC, President-elect Barack Obama and Vice President-elect Joe Biden share a "commitment to ... ensure that as many Americans as possible ... will be able to come together to unite the country and celebrate our common values and shared aspirations."[27]

78. Additionally, in its preparations for the inaugural events, the PIC "unveiled the official theme for the inauguration ... "Renewing America's Promise."[28] That promise was purportedly depicted in the words of the President-elect: "[I]n America, we rise or fall as one nation and one people. That sense of unity and shared purpose is what this Inauguration will reflect."[29]

79. Similarly, "[t]he PIC also outlined a preliminary schedule of official inaugural events that underscores a commitment to organizing activities that are inclusive."[30]

80. Yet, despite the foregoing, Defendants will have an invocation and a benediction during the inauguration. Both of these activities are completely exclusionary, showing absolute

---

[24] Psalms 14:1.

[25] Id.

[26] Leviticus 24:16 states "whoever blasphemes the name of the Lord shall surely be put to death." Denials of God's existence – such as those made by each of the instant plaintiffs – are considered "blasphemy."

[27] Accessed at http://www.pic2009.org/pressroom/entry/presidential_inaugural_launch/ on December 12, 2008.

[28] Accessed at http://www.pic2009.org/pressroom/entry/theme_and_preliminary_information/ on December 25, 2008.

[29] Id.

[30] Id.

disrespect to Plaintiffs and others of similar religious views, who explicitly reject the purely religious claims that will be endorsed, i.e., (a) there exists a God, and (b) the United States government should pay homage to that God.

81. That defendants would engage in such disrespect – while claiming to be dedicated to "unity," "common values," "shared aspirations," "shared purpose," and "a commitment to organizing activities that are inclusive" – is but further evidence of the "real meaning" of the decision to spatchcock clergy into the inauguration.

82. Plaintiff individuals all desire and plan to watch the inauguration of their 44th President, Barack Obama, on January 20, 2009.

83. Under the Establishment Clause, Plaintiffs have a right to view their government in action without being forced to confront official endorsements of religious dogma with which they disagree. This is especially the case when that dogma stigmatizes them in the process.

84. Being forced to confront such religious dogma as the price to pay for observing a governmental ceremony is a substantial burden upon Plaintiffs' rights of Free Exercise as well.[31] One cannot freely live as an adherent to a religious ideology when the government uses its "power, prestige and financial support"[32] to impose a contrary religious doctrine while such individuals are observing its ceremonies.

---

[31] "Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. **While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.**" Thomas v. Review Board, Ind. Empl. Sec. Div., 450 U.S. 707, 717-718 (1981) (emphasis added)

[32] Engel v. Vitale, 370 U.S. 421, 431 (1962) ("When the power, prestige and financial support of government is placed behind a particular religious belief, the indirect coercive pressure upon religious minorities to conform to the prevailing officially approved religion is plain.").

85. To directly violate and abridge any citizen's fundamental constitutional rights under the Establishment and Free Exercise Clauses of the First Amendment demands that the courts examine the challenged governmental activity under a strict scrutiny standard.[33]

86. That standard places the burden of proof upon the governmental actors to demonstrate that their actions serve a compelling interest and that those actions are narrowly tailored to serve that interest.[34] Defendants cannot meet this standard for their actions being challenged in this litigation.

87. Any religious belief or religious expression not adhered to by all is, constitutionally, sectarian. Appendix A.

88. Prayers that declare there is a God exclude Atheistic Americans such as Plaintiffs here, making them feel as "outsiders" due to their personal religious beliefs.

89. Even clergy who have given inaugural prayer recognize this fact. For instance, Rev. Pruden – who gave the invocation at President Truman's 1949 inaugural – noted that: "If you are going to use a phrase or idea that is immediately contrary to their [the audience's] tradition or training they just feel left out and not part of the experience."[35]

90. The prayers given for the past eighteen inaugural ceremonies, spanning only the past 72 years, have been constitutionally sectarian inasmuch as they endorsed the idea that there exists a god, which is a religious view adhered to by only a portion of the American people.

91. In addition to constitutional sectarianism, prayers given over the past 72 years have demonstrated colloquial sectarianism as well, by including patently Christian prayer at every

---

[33] <u>Church of Lukumi Babalu Aye v. City of Hialeah</u>, 508 U.S. 520, 546 (1993).
[34] <u>Id</u>.
[35] Statement of Rev. Edward Hughes Pruden, as quoted in Medhurst MJ. "*God Bless the President: The Rhetoric of Inaugural Prayer.*" (The Pennsylvania State University, 1980) (Available on microfilm from University Microfilms International, Ann Arbor, MI (800-521-0600) at 174.

inauguration since the unconstitutional practice of including clergy to pray at presidential

inaugurations began in 1937. Appendix B.

92. With this pedigree – as well as with the incoming President's repeated declarations of his

Christian faith – it is likely that Defendants Warren and/or Lowery will also give patently

Christian prayer at the coming inaugural exercises.

93. AHA has had members who have personally been unwillingly confronted with the inaugural

prayers since its inception in 1941. There have been no less than sixteen public inaugurations

since that time. In every one of these, (Christian) Monotheistic clergy have been granted a

unique platform to espouse their religious dogma.

94. As it is, Atheists are the most despised minority in the land.[36] Plaintiffs contend that it is the

sort of government-sponsored activity at issue in this case – i.e., where the "power, prestige

and financial support"[37] of government is placed behind Monotheism – that stigmatizes them

and perpetuates, if not instigates, this situation.

95. Defendants are acting in concert to further worsen the social condition of Plaintiffs. They are

engaging in and promoting governmental activities that (a) will exacerbate Plaintiffs'

"outsider" status, (b) will have religious purposes, (c) will have religious effects, (d) will

endorse the purely religious notion that there exists a God, (e) will show a preference for that

exclusionary religious belief, (f) will affiliate government with that religious belief, (g) will

signal the disapproval of Plaintiffs' religious views, (h) will violate the governmental

neutrality required in matters of religion, (i) will inculcate the specific religious belief that

---

[36] "Atheists are at the top of the list of groups that Americans find problematic ... It is striking that the rejection of Atheists is so much more common than rejection of other stigmatized groups." Edgell P, Hartmann D, and Gerteis J. *Atheists as "other": Moral Boundaries and Cultural Membership in American Society*. American Sociological Review, Vol. 71 (April, 2006), p. 211-234 at 230.
[37] <u>Engel v. Vitale</u>, 370 U.S. 421, 431 (1962). <u>See</u> note 32, <u>supra</u>.

God exists (and likely the specific religious belief that Jesus Christ is the Son of God), and (j) will place government's "imprimatur" on those specific religious beliefs.

96. Moreover, Defendants know that they will impose these harms not only upon the adult plaintiffs in this case, but upon the minor plaintiffs as well.

97. Such impositions, upon impressionable young children, amount to the coercive imposition of religious dogma specifically denounced by the Supreme Court in nine out of nine public school cases (where religious dogma is imposed upon children in a governmental setting). McCollum v. Board of Education, 333 U.S. 203 (1948) (religious teaching); Engel v. Vitale, 370 U.S. 421 (1962) (prayer); Abington School District v. Schempp, 374 U.S. 203 (1963) (Bible-reading); Epperson v. Arkansas, 393 U.S. 97 (1968) (forbidding the teaching of evolution); Stone v. Graham, 449 U.S. 39 (1980) (posting Ten Commandments); Wallace v. Jaffree, 472 U.S. 38 (1985) (moment of silence/prayer); Edwards v. Aguillard, 482 U.S. 578 (1987) ("creation science"); Lee v. Weisman, 505 U.S. 577 (1992) (graduation benedictions); and Santa Fe Independent School District v. Doe, 530 U.S. 290 (2000) (prayer at football games).

98. In view of the foregoing, Plaintiffs set forth the following Causes of Action.

# CAUSES OF ACTION

**COUNT 1:   THE ALTERATION OF THE PRESIDENTIAL OATH OF OFFICE SPECIFIED IN ARTICLE II OF THE CONSTITUTION, TO BE PERPETRATED BY DEFENDANT ROBERTS WITH NO AUTHORITY WHATSOEVER, VIOLATES THE ESTABLISHMENT CLAUSE**

99. The introductory allegations set forth in paragraphs 1-98 are realleged herein.

100.    Of all governmental officials, the one who most personifies the rule of law and the supremacy of the Constitution is the Chief Justice of the United States. 28 U.S.C. § 1. One might argue that he, more than anyone, has a duty to maintain the document's purity.

101.    The oath of office for the President of the United States is specified in the Constitution's Article II, Section 1. In its entirety, it reads:

> ''I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my Ability, preserve, protect and defend the Constitution of the United States.''

102.    It is to be noted that the words, "so help me God" are not included in this oath.

103.    That "so help me God" was added to the presidential oath by George Washington is a myth. There is no contemporaneous account supporting this claim, which was first made in 1854,[38] apparently on the basis of a recollection of Washington Irving. Irving was six years old in 1789, when the first inaugural was held. A historical claim based upon nothing but the alleged recollection of a six year old, first made more than six decades later, is of highly questionable validity. Combined with the fact that Irving's report of where he was standing during the inauguration would have made it impossible for him to have heard the oath at all, that validity falls to zero.

---

[38] Griswold RW. *The Republican Court: American Society in the Days of Washington* (New York: D. Appleton & Co.; 1856), p. 141.

104.    In fact, it isn't until 1881, ninety-two years after George Washington's initial ceremony, that the first use of the "so help me God" phrase can be verified. That occurred when Vice President Chester A. Arthur took the oath upon hearing of President James Garfield's death.[39]

105.    The phrase, if used at all during the next half century, was apparently used only intermittently until 1933, at President Franklin Roosevelt's first inauguration. (It is known that neither President Herbert Hoover nor Chief Justice William Howard Taft used those words at Hoover's inauguration in 1929.[40])

106.    Since 1933, "so help me God" has been used at every public inaugural ceremony, with that unauthorized alteration interposed each time by the Chief Justice of the United States.[41]

107.    If President-elect Obama (as a black man fully aware of the vile effects that stem from a majority's disregard of a minority's rights, and as a Democrat fully aware of the efficacy his Republican predecessor's "so help me God" oath additions) feels that the verbiage formulated by the Founders is so inadequate that he needs to interlard his oath with a purely religious phrase deemed unnecessary by the first twenty presidents, Plaintiffs have no objection at this time. The President, like all other individuals, has Free Exercise rights, which might permit such an alteration.

108.    No such Free Exercise rights, however, come into play on the part of the individual administering the oath to the President.

---

[39] *Arthur Inaugurated.* The Washington Post (1877-1954); Sep 23, 1881; ProQuest Historical Newspapers, The Washington Post (1877 - 1989) pg. 1.

[40] Bendat J. *Democracy's Big Day: The Inauguration of Our President 1789-2009.* (iUniverse Star: New York; 2008) at 30-32.

[41] Accessed at http://www.aoc.gov/aoc/inaugural/pres_list.cfm?RenderForPrint=1 on December 28, 2008.

109.     It has been announced that on January 20, 2009, "President-elect Barack H. Obama will take the Oath of Office, using President Lincoln's Inaugural Bible, administered by the Chief Justice of the United States, the Honorable John G. Roberts, Jr."[42]

110.     Absent constitutional amendment, there is no authority to alter the text of the Constitution, the provisions of which are "fixed and exclusive." United States Term Limits v. Thornton, 514 U.S. 779, 790 (1995) (discussing "the Framers' intent that the [congressional] qualifications in the Constitution be fixed and exclusive."[43]).

111.     Thornton involved a challenge to an Arkansas constitutional amendment, placing term limits on the state's federal congressmen. If a state (which has powers reserved to it under the Tenth Amendment) has no authority to even democratically pass an amendment to its own constitution that affects a federal constitutional provision, then surely no unelected official (who has no supporting constitutional provision) can literally alter the document's text without any process other than his own will.

112.     This is especially true when the alteration is "contrary to the manifest tenor of the Constitution,"[44] as is the case here. Article VI, clause 3 of the Constitution states, "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." More to the point, the opening clause of the Bill of Rights states that government "shall make no law respecting an establishment of religion."

---

[42] From the "Inaugural Schedule" as given at the Presidential Inaugural Committee's website at http://www.pic2009.org/pages/schedule/, accessed on December 27, 2008.

[43] Interestingly, Thornton **four times** quotes James Madison's Federalist No. 52 for the proposition that "the door of this part of the federal government is open to merit of every description, ... without regard to ... any particular profession of religious faith." 514 U.S. at 794, 807, 808 and 822 (n.32). Additionally, Federalist No. 57, where the "Father of the Constitution" wrote "No qualification of ... religious faith ... is permitted to fetter the judgment or disappoint the inclination of the people," is quoted twice. Id. at 808 and 819.

[44] Hamilton A. Federalist #78. Accessed at http://avalon.law.yale.edu/18th_century/fed78.asp on December 28, 2008.

113. It might be argued that the change is permissible inasmuch as it is only four words that are being appended to the text. Yet could Defendant Roberts intrude the single word "not" into the oath, before, say, the words "solemnly," "faithfully" or "preserve"? What criterion determines what changes are or are not acceptable?

114. Similarly, one can consider "so help me Protestant Christianity," which is constitutionally indistinguishable from the "so help me God" phrase currently in vogue. Surely, no one today would argue that this language would be permissible. Yet our colonial history is just as anti-Catholic as it is anti-Atheist. Appendix C.

115. James Madison, "the Father of the Constitution," warned us that governmental actions such as those being challenged in this case have real effects. In what has been called "the most important document explaining the Founders' conception of religious freedom,"[45] cited in no less than 35 separate opinions, in 32 separate cases, and by sixteen different Justices, Madison informed us that each such action "degrades from the equal rank of Citizens all those whose opinions in Religion do not bend to those of the Legislative authority."[46]

116. That Madison was absolutely correct can, perhaps, best be seen in the dissenting opinion referenced at paragraph 61, supra. Again, a current Supreme Court Justice – joined by two of his brethren, no less[47] – wrote that our Constitution "permits the disregard of devout Atheists."[48]

---

[45] McConnell M. *New Directions in Religious Liberty: "God is Dead and We Have Killed Him!": Freedom of Religion in the Post-modern Age.* 1993 B.Y.U.L. Rev. 163, 169 (1993).

[46] Madison J. *Memorial and Remonstrance Against Religious Assessments*, as provided in the Appendix to Everson v. Board of Education, 330 U.S. 1, 63-72 (1947) at 69.

[47] Justice Kennedy, who joined in Justice Scalia's McCreary dissent, distanced himself from that portion of the opinion.

[48] McCreary County v. ACLU of Kentucky, 545 U.S. 844, 893 (2005) (Scalia, J., dissenting).

117.    This is extraordinary: three Justices of the Supreme Court contended that the Constitution

of the United States of America – with its Due Process and Equal Protection Clauses, and

with religion addressed only in the negative (stating that "no religious Test shall ever be

required as a Qualification to any Office or public Trust under the United States,"[49] and that

our governmental officials "shall make no law respecting an establishment of religion"[50]) –

"permits the disregard" of the sincerely held religious views of Plaintiffs in this case.

118.    The methodology by which this conclusion was reached pertains directly to the instant

litigation. Despite being authored by a renowned "textualist" (who has, himself written that

"no tradition can supersede the Constitution"[51]), the opinion reached this conclusion not by

referencing any text, but by referencing an ever-increasing mass of so-called "traditions."

119.    This was the case even though each of those "traditions" is "directly subversive of the

principle of equality."[52]

120.    Included in the "traditions" used to justify "the disregard of devout Atheists" was the

action being challenged here: i.e., the appending of "so help me God" to the presidential

oath of office. When performed by the Chief Justice of the United States as part of the

inauguration of the President, it wields enormous power in reinforcing the false notion

that the United States is a nation where Monotheism is officially preferred, thus

stigmatizing Plaintiffs and others who hold contrary religious views.

121.    To personally experience the Chief Justice of the United States altering the

Constitution to further a religious ideal completely contrary to the religious ideals held by

---

[49] United States Constitution, Article VI, cl. 3.
[50] United States Constitution, Amendment I.
[51] <u>Rutan v. Republican Party of Illinois</u>, 497 U.S. 62, 96 (n.1) (1990) (Scalia, J., dissenting).
[52] <u>Zablocki v. Redhail</u>, 434 U.S. 374, 398 (1978) (Powell, J., concurring).

Plaintiffs is a concrete injury that furthers their marginalization and disenfranchisement before their very eyes.

122. For those Plaintiffs watching the inaugural ceremony with their children, this action – by the nation's highest judicial official – is especially intrusive and harmful.

123. An oath-administrator's addition of "so help me God" to the constitutionally-prescribed presidential oath of office violates every Establishment Clause test enunciated by the Supreme Court, including the neutrality test, the purpose prong of the <u>Lemon</u> test, the effects prong of the <u>Lemon</u> test, the endorsement test, the outsider test and the imprimatur test.

124. Additionally, especially with impressionable children watching, this addition violates the coercion test.

125. Plaintiffs have a right to view the inauguration of their president without having their Chief Justice "degrad[ing them] from the equal rank of Citizens."


**COUNT 2: GOVERNMENT-SPONSORED INVOCATIONS TO GOD AND BENEDICTIONS IN THE NAME OF GOD, PROVIDED AT THE INAUGURATION OF THE PRESIDENT BY GOVERNMENT-INVITED CLERGY, VIOLATE THE ESTABLISHMENT CLAUSE**

126. The allegations set forth in paragraphs 1-125 are realleged herein.

127. On December 17, 2008, Defendant JCCIC announced that Defendant Warren and Defendant Lowery would be providing, respectively, and invocation and benediction at the inauguration. Appendix D.

128. The invocation and the benediction will infuse the inaugural exercises with explicitly religious dogma.

129.     Specifically, Defendants Warren and Lowery, with the support of and facilitation by their codefendants, will be giving one or more religious prayers during that governmental ceremony.

130.     Although the Supreme Court has noted that "no one acquires a vested or protected right in violation of the Constitution by long use, even when that span of time covers our entire national existence and indeed predates it," Walz v. Tax Commission, 397 U.S. 664, 678 (1970), it has, in one case which "clearly demonstrates the utter inconsistency of our Establishment Clause jurisprudence," McCreary, 545 U.S. at 899 (n.8) (Scalia, J., dissenting), permitted legislative chaplain-led prayers.

131.     That permission was based largely on that practice's "unambiguous and unbroken history of more than 200 years," Marsh v. Chambers, 463 U.S. 783, 792 (1983), which is totally different from clergy-led prayers at presidential inaugurations. "Not until January 20, 1937, was a prayer offered as an official part of the American ceremony of inauguration."[53] Furthermore, of the nation's 57 public presidential inaugurations, 39 were devoid of clergy-led prayers. Only 18 included them.[54]

132.     Thus – even accepting for the moment that historically-based violations of the principles underlying the Establishment Clause are permissible, Marsh – the practice at issue in this litigation is not historically-based.

133.     Other "[i]nherent differences" from Marsh, noted to be important by the Supreme Court, exist in this case. In a state legislature, members are exclusively "adults." Lee v. Weisman,

---

[53] Medhurst MJ. "*God Bless the President: The Rhetoric of Inaugural Prayer.*" (The Pennsylvania State University, 1980). (Available on microfilm from University Microfilms International, Ann Arbor, MI (800-521-0600). At 71.
[54] Gleaned by analyzing the data at http://memory.loc.gov/ammem/pihtml/pioaths.html.

505 U.S. 577, 597 (1992). At the inauguration will be numerous impressionable children (including some Plaintiffs here).

134.     Similarly, those attending legislative sessions are "free to enter and leave with little comment and for any number of reasons." <u>Id</u>. Those with tickets to the inaugural event are not at all "free" in this manner, and the predicted turnout at the mall suggests that any "freedom" of movement will be debatable at best.

135.     Likewise, there will be "[t]he influence and force of a formal exercise," <u>id</u>., far stronger than in <u>Lee</u>, that was felt in that case to be an important distinguishing feature from the prayers <u>Marsh</u>.

136.     Moreover, <u>Lee</u> pointed to the government's "high degree of control over the precise contents of the program," 505 U.S. at 597, which served to "make the prayer a state-sanctioned religious exercise in which the [listener] was left with no alternative but to submit." Id. Surely, contrasted with a single high school event, that character is only heightened at the nation's grandest ceremony, directed not only to the entire nation, but to the entire world.

137.     What must also be noted is that <u>Marsh</u> contended that the legislative prayers at issue were permissible because "there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief." <u>Marsh</u>, 463 U.S. at 794-95. It is hard to conceive of a more ludicrous claim from the point of view of Atheists. In fact, that this statement was made only serves to shine a light on the disenfranchised status of Plaintiffs and their religious compatriots, who were obviously never even considered by the <u>Marsh</u> Court.

138.     Lastly, in the two cases involving government-sponsored prayers decided by the Supreme Court since <u>Marsh</u>, language completely contrary to the <u>Marsh</u> holding has been spoken. In <u>Lee</u>, 505 U.S. at 589, the Court surmised:

> [T]hough the First Amendment does not allow the government to stifle prayers which aspire to these ends, neither does it permit the government to undertake that task for itself. … The First Amendment's Religion Clauses mean that religious beliefs and religious expression are too precious to be either proscribed or prescribed by the State.

139.     Eight years later, the high Court issued a dictum that unequivocally flies in the face of the legislative chaplain ruling from 1983:

> [T]he religious liberty protected by the Constitution is abridged when the State affirmatively sponsors the particular religious practice of prayer.

<u>Santa Fe Independent School District v. Doe</u>, 530 U.S. 290, 313 (2000).

140.     Accordingly, presidential inaugurations fall outside of the ambit of <u>Marsh</u>; <u>Lee</u> and <u>Santa Fe</u> control the outcome of this litigation.

141.     Moreover, clergy-led invocations and benedictions violate every Establishment clause test enunciated by the Supreme Court. Specifically (in addition to the coercion test of <u>Lee</u>), they violate the neutrality test, the purpose prong of the <u>Lemon</u> test, the effects prong of the <u>Lemon</u> test, the endorsement test, the outsider test and the imprimatur test.


**COUNT 3:  THE ALTERATION OF THE PRESIDENTIAL OATH OF OFFICE, TO BE PERPETRATED BY DEFENDANT ROBERTS, AND THE GOVERNMENT-SPONSORED, CLERGY-LED INVOCATION AND BENEDICTION, TO BE PERPETRATED BY THE REMAINING DEFENDANTS, VIOLATE THE FREE EXERCISE CLAUSE**

142.     The allegations set forth in paragraphs 1-141 are realleged herein.

143.     Individuals have a right to observe their government in action. <u>Richmond Newspapers v. Va.</u>, 448 U.S. 555 (1980) (applying this principle to the observation of criminal trials).

144.     This right surely must be free from governmental endorsement of purely religious claims.

145.     Planning to watch the inaugural ceremonies, but wishing to avoid any government-sponsored religious dogma (much less Christian, monotheistic religious dogma), Plaintiffs are placed in the untenable position of having to choose between not watching the presidential inauguration or being forced to countenance endorsements of purely religious notions that they expressly deny. To be placed in this position is a violation of Plaintiffs' Free Exercise rights:

> The essence of the Government's position is that, with regard to a civic, social occasion of this importance, it is the objector, not the majority, who must take unilateral and private action to avoid compromising religious scruples, hereby electing to miss the graduation exercise. This turns conventional First Amendment analysis on its head. It is a tenet of the First Amendment that the State cannot require one of its citizens to forfeit his or her rights and benefits as the price of resisting conformance to state-sponsored religious practice.

<u>Lee v. Weisman</u>, 505 U.S. 577, 596 (1992).

146.     In fact, "Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine." <u>Sherbert v. Verner</u>, 374 U.S. 398, 404 (1963).


147.     The Supreme Court has written that the exercise of religion includes "assembling with others for a worship service." <u>Employment Div. v. Smith</u>, 494 U.S. 872, 877 (1990).

148.     Thus, the use of clergy to espouse the glory of God at a public ceremony is clearly a religious exercise.

149.     Yet the High Court has also written that "[t]hose in office must be resolute in resisting importunate demands and must ensure that the sole reasons for imposing the burdens of law and regulation are secular." <u>Church of Lukumi Babalu Aye v. City of Hialeah</u>, 508 U.S. 520, 547 (1993).

150.     Plaintiffs' religious practices include avoiding prayer to God, just as a Seventh Day Adventist's religious practices include not working on Saturday, <u>Sherbert</u>, or an Amish person's religious practices include not being exposed to modern society. <u>Wisconsin v. Yoder</u>, 406 U.S. 205 (1972).

151.     Accordingly, forcing Plaintiffs to choose between attending the inauguration of their president or acting contrary to their religious tenets – as occurs when the government imposes clergy-led prayer at the ceremony – is a violation of Plaintiffs' Free Exercise rights.


**COUNT 4:   THE ALTERATION OF THE PRESIDENTIAL OATH OF OFFICE, TO BE PERPETRATED BY DEFENDANT ROBERTS, AND THE GOVERNMENT-SPONSORED, CLERGY-LED INVOCATION AND BENEDICTION, TO BE PERPETRATED BY THE REMAINING DEFENDANTS, VIOLATE RFRA**

152.     The allegations set forth in paragraphs 1-151 are realleged herein.

153.     In response to the Supreme Court's diminution of the protections under the Free Exercise Clause, Congress enacted 42 U.S.C. §§ 2000bb <u>et seq</u>. Known as the Religious Freedom Restoration Act ("RFRA"), this legislation states, in pertinent parts:

> § 2000bb(a)(3):
> "The Congress finds that governments should not substantially burden religious exercise without compelling justification."

§ 2000bb(b)(1) and (b)(2):
> "The purposes of this chapter are to restore the compelling interest test … and to guarantee its application in all cases where free exercise of religion is substantially burdened; and to provide a claim or defense to persons whose religious exercise is substantially burdened by government."

§ 2000bb-1(b)(1) and (b)(2):
> "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest."

§ 2000bb-2(4):
> "[T]he term "exercise of religion" means religious exercise, as defined in section 2000cc–5 of this title." [§ 2000cc–5(7)(A) "The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief."]

§ 2000bb-3(a):
> "This chapter applies to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993."

§ 2000bb-3(c):
> "Nothing in this chapter shall be construed to authorize any government to burden any religious belief."

154. There is certainly no compelling state interest in having the government advocate for a religious view or sponsor a religious exercise. On the contrary, the compelling interest is in maintaining religious neutrality. "There is no doubt that compliance with the Establishment Clause is a [compelling] state interest." Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 761 (1995).

155. Accordingly, the demands of strict scrutiny have not been met and Defendants must be enjoined from their planned religious activities.

**COUNT 5:** **THE ALTERATION OF THE PRESIDENTIAL OATH OF OFFICE, TO BE PERPETRATED BY DEFENDANT ROBERTS, AND THE GOVERNMENT-SPONSORED, CLERGY-LED INVOCATION AND BENEDICTION, TO BE PERPETRATED BY THE REMAINING DEFENDANTS, VIOLATE THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT**

156.     The allegations set forth in paragraphs 1-155 are realleged herein.

157.     The Fifth Amendment states (in pertinent part) that "No person shall ... be deprived of ... liberty ... without due process of law."

158.     "The Due Process Clause of the Fifth Amendment ... has both substantive and procedural components; it performs the office of both the Due Process and Equal Protection Clauses of the Fourteenth Amendment in requiring that the federal sovereign act impartially." Fullilove v. Klutznick, 448 U.S. 448, 548 (1980) (Stevens, J., dissenting).

159.     In terms of substantive due process, the allegations in this Complaint demonstrate that Plaintiffs have lost in the past, and will lose on January 20, 2009, their basic liberties to religious freedom under both the Establishment and the Free Exercise Clauses of the First Amendment.

160.     They also have in the past (and will have after January 20, 2009) been denied procedural due process, inasmuch as there is no way – except via the courts – that they can have their religious views respected.

161.     Moreover, by being denied equivalent treatment in terms of their religious views and practices, their rights have been and will be abrogated under the Equal Protection component of the Fifth Amendment's Due Process clause. Adarand Constructors, Inc. v. Mineta, 534 U.S. 103, 105 (2001).

**COUNT 6:   THE ALTERATION OF THE PRESIDENTIAL OATH OF OFFICE, TO BE PERPETRATED BY DEFENDANT ROBERTS, AND THE GOVERNMENT-SPONSORED, CLERGY-LED INVOCATION AND BENEDICTION, TO BE PERPETRATED BY THE REMAINING DEFENDANTS, ARE VOID AS AGAINST PUBLIC POLICY**

162.    The allegations set forth in paragraphs 1-161 are realleged herein.

163.    On January 20, 2009, the nation's next inaugural ceremony is scheduled to take place. Presidential inaugurals are the Nation's grandest official ceremonies, intended to unite our citizens and to instill confidence in our Constitutional system of government.

164.    Interlarding those ceremonies with clergy who espouse sectarian religious dogma does not unite, but rather divides, our citizenry. Similarly, instead of instilling confidence in our governmental structure, it tears at the very foundation upon which that structure is built.

165.    Accordingly, beyond their constitutional infirmities, the aforementioned activities are void as against public policy. As has been emphasized by Defendant PIC, itself, one of the key purposes of the inauguration is to engender national unity. See paragraphs 77-79, supra.

166.    Placing religious dogma completely contrary to the beliefs held by Plaintiffs (and others) into the inaugural ceremony frays that unity.

167.    Furthermore, the primary act of the inauguration is the administration of the presidential oath of office, where the incoming Chief Executive declares that he "will to the best of [his] ability, preserve, protect and defend the constitution of the United States."

168.    It is also void as against public policy, as well as an offense of the highest magnitude, for Defendants here to violate the Constitution as the new President is swearing to "preserve, protect and defend" it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

I.  To declare that unauthorized addition of "so help me God" to the constitutionally-prescribed presidential oath of office by the individual administering that oath to the President violates the Establishment and Free Exercise Clauses of the First Amendment, as well as 42 U.S.C. §§ 2000bb et seq. (Religious Freedom Restoration Act (RFRA));

II. To declare that the government-sponsored use of any clergy (much less an openly Christian clergy) at a presidential inauguration violates the Establishment and Free Exercise Clauses of the First Amendment, as well as 42 U.S.C. §§ 2000bb et seq. (Religious Freedom Restoration Act (RFRA));

III. To enjoin Defendant Roberts, in his official capacity and in his individual capacity, from altering the constitutionally-prescribed text of the presidential oath of office while administering that oath to the President-elect at the January 20, 2009 inauguration, as well as at any future presidential inauguration;

IV. To enjoin the remaining Defendants – and/or similarly situated government officials – from utilizing any clergy to engage in any religious acts at the January 20, 2009 inauguration, as well as at any future presidential inauguration;

V.  In the alternative, to enjoin these Defendants – and/or similarly situated government officials – from utilizing clergy to engage in overtly Christian religious acts at the January 20, 2009 inauguration, as well as at any future presidential inauguration;

VI. To allow Plaintiffs to recover costs, expert witness fees, attorney fees, etc. as may be allowed by law; and

VII. To provide such other and further relief as the Court may deem proper.

Respectfully submitted,


/s/ - Michael Newdow

Michael Newdow                                    Robert Ritter
*In pro per and Pro hac vice*[55]                              DC Bar #414030
PO Box 233345                                     AHA – 1777 T Street, NW
Sacramento, CA  95823                             Washington, DC  20009

Phone:          (916) 427-6669                    (202) 238-9088
E-mail:         NewdowLaw@gmail.com               BRitter@americanhumanist.org

---

[55] *Pro hac vice* application pending