**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**MICHAEL NEWDOW**, *et al.*,

                    **Plaintiffs**,

      **v.**

**HON. JOHN ROBERTS, JR.**, *et al.*,

             **Defendants.**

**Civil Action No. 1:08-cv-02248-RBW**

---

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSES TO PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

---

MICHAEL NEWDOW
*In pro per* and *pro hac vice*
PO BOX 233345
SACRAMENTO, CA  95823

(916) 427-6669
NewdowLaw@gmail.com



ROBERT V. RITTER
DC BAR #414030
AHA – 1777 T STREET, NW
WASHINGTON, DC  20009

(202) 238-9088
BRitter@americanhumanist.org

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

ARGUMENT ......................................................................................................... 2

   **I.**   **No Prior Inaugural Challenges are Binding Upon This Court** ................................. 2

   **II.** **Plaintiffs have standing** ........................................................................ 3

        **a. Plaintiffs have suffered an injury in fact** ............................................. 4

        **b. There is the necessary causal connection** ............................................ 6

        **c. A favorable decision will readily redress the injury** .............................. 7

   **III.** **The requirements for a Preliminary Injunction have been met** ........................... 11

        **a. If the Principles underlying the Constitution are following,**
          **Plaintiffs cannot but succeed on the merits** ...................................... 11

            **i. Spatchcocking "so help me God" into the oath and**
              **having chaplains engage in inaugural prayer violate**
              **every Supreme Court test** ...................................................... 11

            **ii. Besides having questionable continuing validity, Marsh is**
               **inapt** ........................................................................ 13

        **b. That Plaintiffs will suffer irreparable harm is essentially**
          **acknowledged by Defendants** ...................................................... 17

        **c. No cognizable injury to others would accrue with the grant**
          **of the Preliminary Injunction** .................................................... 17

        **d. The requested injunction would serve the public interest** ...................... 18

CONCLUSION ..................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

Bowsher v. Synar, 478 U.S. 714 (1986)....................................................................10
City of Boerne v. Flores, 521 U.S. 507 (1997)...........................................................10
Greater New Orleans Broad. Ass'n v. United States, 527 U.S. 173 (1999)............................10
Hamdi v. Rumsfeld, 124 S. Ct. 2633 (2004) ..............................................................10
Legal Servs. Corp. v. Velazquez, 531 U.S. 533 (2000) ................................................10
Metropolitan Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, 501 U.S. 252
    (1991) ...........................................................................................................10
Plaut v. Spendthrift Farm, 514 U.S. 211 (1995).........................................................10
Printz v. United States, 521 U.S. 898 (1997) .............................................................10
United States v. Lopez, 514 U.S. 549 (1995)..............................................................10
United States v. Lovett, 328 U.S. 303 (1946) .............................................................10
United States v. Morrison, 529 U.S. 598 (2000) .........................................................10
United States v. National Treasury Emples. Union, 513 U.S. 454 (1995).............................10

**Constitutional Provisions**

United States Constitution, Amendment X ................................................................10

# INTRODUCTION

> Who does not see that the same authority which can establish
> Christianity, in exclusion of all other Religions, may establish with
> the same ease any particular sect of Christians, in exclusion of all
> other Sects?[1]

Plaintiffs have moved for a Preliminary Injunction to prevent the inauguration of the

president of **all Americans** from being infused with sectarian religious doctrine. Document 4.

Specifically, they have moved to keep the Chief Justice of the United States from signaling to the

nation and the world that this republic is one that holds the purely religious (and controversial)

view that there exists a God, and to keep the inaugural platform from being used by sectarian

clergy to espouse that view. As the Court ponders the weighty issues involved, it may wish to

consider the constitutionally-indistinguishable situation of the Chief Justice appending "so help

me Protestant Christianity" to the textually-prescribed oath, and having clergy ascending the

inaugural dais to lead the tens of millions watching the ceremony in prayer to Protestant

Christianity. After all, who does not see that the same authority which can establish Monotheism,

in exclusion of all other religious belief systems, may establish with the same ease Christianity in

exclusion of all other religions?

---

[1] Madison, James. *A Memorial and Remonstrance, presented to the General Assembly of the state of Virginia, at their session in 1785, in consequence of a bill brought into that Assembly for the establishment of religion by law.* (Worcester, MA: Isaiah Thomas; 1786) at 5. The *Memorial and Remonstrance* – cited in 35 separate opinions in 32 separate Supreme Court cases by 16 separate justices – has been referred to as "the most important document explaining the Founders' conception of religious freedom." McConnell M. *New Directions in Religious Liberty: "God is Dead and We Have Killed Him!": Freedom of Religion in the Post-modern Age.* 1993 B.Y.U.L. Rev. 163, 169 (1993).

<u>**ARGUMENT**</u>

**I.   No Prior Inaugural Challenges are Binding Upon This Court**

The lead Plaintiff in this litigation, Michael Newdow, has previously challenged the use

of chaplains at the two prior inaugurations. In 2001, he challenged the practice after he watched

the inauguration on television at his home in California. In that case, the federal Defendants

argued that Newdow lacked standing because, among other things, he was not someone who

"lived or worked in the community where the religious symbols were being displayed."

Appendix A (Federal Defendants' [2001] Objections to Magistrate Judge's Findings and

Recommendations, at 2). Newdow lost in the lower court and appealed to the United States

Circuit Court for the Ninth Circuit, where he obtained a terse adverse ruling: "[Newdow] lacks

standing to bring this action because he does not allege a sufficiently concrete and specific

injury." Federal Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction

(hereafter "Fed Opp.") (Document 13 at 7).

A second challenge occurred in 2005 in the United States District Court for the District of

Columbia. There, the Defendants argued, among other things, that "[t]he fact that Newdow may

attend the 2005 Inauguration in-person, as opposed to watching it on television, as he did in

2001, is not sufficient to alter the nature of his alleged injury." Appendix B (Federal Defendants'

[2005] Memorandum in Opposition ...), at 12. After the denial of a preliminary injunction,

<u>Newdow v. Bush</u>, 355 F. Supp. 2d 265 (D.D.C. 2005), followed by a dismissal of the case,

<u>Newdow v. Bush</u>, 391 F. Supp. 2d 95 (D.D.C. 2005), an appeal was taken, but dismissed as

moot. Appendix C.

Not surprisingly, Defendants spend a significant amount of prose reviewing the judicial

opinions in those previous cases. However, neither another Circuit's appellate decisions, <u>ITT</u>

Industries v. NLRB, 251 F.3d 995, ___ (D.C. Cir. 2001) ("Of course that decision as the opinion

of another circuit is not binding here"), nor a previous District Court decision, Veitch v. England,

471 F.3d 124, 130 (D.C. Cir. 2006) ("a single district court decision ... is not binding precedent

for any other court") is binding upon this Court. Furthermore, as Plaintiffs will now show, they

were wrongly decided.


## II.  Plaintiffs have standing

Following the lead of the Supreme Court in Bowsher v. Synar, 478 U.S. 714, 721 (1986),

the District of Columbia Circuit has concluded that "'[f]or each claim, if constitutional and

prudential standing can be shown for at least one plaintiff, we need not consider the standing of the

other plaintiffs to raise that claim.'" Animal Legal Defense Fund v. Glickman, 154 F.3d 426,

429(D.C. Cir. 1998) (citing Mountain States Legal Foundation v. Glickman, 92 F.3d 1228, 1232

(D.C. Cir. 1996). Thus, Plaintiffs will argue this case from the point of view of the plaintiff with the

"most" standing: an impressionable Atheist child with an intense desire to personally witness the

inauguration of Barack Obama, who will travel by herself to Washington, DC, and who will view

the ceremony alone, without her parents or other loved ones to protect her. Declaration of Michael

Newdow, accompanying this Reply. They will use the familiar construct laid down in Lujan v.

Defenders of Wildlife, 504 U.S. 555, 560 (1992):[2]

> [T]he irreducible constitutional minimum of standing contains three
> elements. First, the plaintiff must have suffered an "injury in fact." ...
> Second, there must be a causal connection between the injury and the
> conduct complained of -- the injury has to be "fairly . . . trace[able] to
> the challenged action of the defendant, and not . . . the result [of] the
> independent action of some third party not before the court." Third, it
> must be "likely," as opposed to merely "speculative," that the injury
> will be "redressed by a favorable decision."

_____

[2] Citations omitted.

### a. Plaintiffs have suffered an injury in fact

Lujan defines an injury in fact as an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Id. (citations omitted). There is no question that the injury here meets this standard. First of all, the injury is identical to the one suffered by the plaintiffs in Lee v. Weisman, 505 U.S. 577 (1992). The plaintiff will be at a ceremony in which a members of the clergy will be espousing prayer which she will be unwilling to hear, and unable to avoid.

Defendants' repeated citations to Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464 (1982) are unavailing. For instance, the claim that standing doesn't arise from "psychological consequence presumably produced by observation of conduct with which one disagrees," Fed Opp. (Document 13 at 7), misses the entire point of the Supreme Court's instructions. The issue is not whether or not there is "psychological consequence." (Few lacking a psychological injury would be willing to endure the travails of litigation.) The issue is simply whether or not that injury arose because the plaintiff was informed indirectly, or because it was "a personal injury suffered by [her] *as a consequence* of the alleged constitutional error." Valley Forge, 454 U.S. at 485.

Defendants correctly cite case law when they write "'allegations of stigmatic injury will not suffice to link a plaintiff personally to the conduct he challenges unless . . . the plaintiff personally has been denied a benefit.'" Fed Opp. (Document 13 at 14) (citing Kurtz v. Baker, 829 F.2d 1133, 1141 (D.C. Cir. 1987). Their error, however, is to deny the obvious personal link that exists when an individual is there personally hearing the religious message and bearing the religious assault.

The attempt to analogize the injuries in the instant case to those in <u>In re Navy Chaplaincy</u>, 534 F.3d 756 (D.C. Cir. 2008) is remarkable. In <u>Navy Chaplaincy</u>, "plaintiffs have conceded that they themselves did not suffer employment discrimination on account of their religion. ... Rather, they suggest that *other* chaplains suffered such discrimination." <u>Id</u>. at 760 (citation omitted). Here, the injuries – having contrary religious dogma imposed during what is supposed to be a governmental (i.e., a secular) ceremony, and being stigmatized by the association of that dogma with government – are plastered upon each plaintiff. In fact, the point of <u>Navy Chaplaincy</u> that bears notice is that the Court "'must ... assume that on the merits the plaintiffs would be successful in their claims.'" <u>Id</u>. (citing <u>city of Waukesha v. EPA</u>, 320 F.3d 228, 235 (D.C. Cir. 2003)). Assuming, then, that the government is violating the Establishment Clause, the Free Exercise Clause, the Due Process Clause and RRFA, the impressionable child Plaintiff here is obviously personally injured.

If the foregoing is not enough to prove the point, the opinion in <u>Animal Legal Defense Fund v. Glickman</u>, 332 U.S. App. D.C. 104 (D.C. Cir. 1998) (*en banc*) is fatal to Defendants' argument. There, a plaintiff became upset because he felt the government's treatment of a Japanese Snow Macaque he saw was making the monkey unhappy. With standing deemed to exist in that setting, a plaintiff who becomes upset because of the government's maltreatment of herself must surely have standing as well.

The injury in this case is concrete and particularized. Inasmuch as Defendants have admitted this injury is to occur[3] – it is anything but conjectural or hypothetical.

---

[3] See Declaration of Jeffrey P. Minear (Document 13-9), acknowledging that Defendant Hon. John Roberts, Jr., will be adding "so help me God" to the constitutionally-prescribed oath; and Appendix B submitted with Plaintiff's Preliminary Injunction Motion (Document 4-3), acknowledging that the invocation and benediction will occur.

### b. There is the necessary causal connection

That Defendant Hon. John Roberts, Jr., will cause the injury that stems from his decision to alter the constitutionally-prescribed oath of office is too self-evident to dispute. It may be argued that he is "just" doing the President's bidding, but that is a merits argument. The fact remains that it will be his voice deluding the audience into believing that the presidential oath of office contains the challenged, purely religious words, which will give rise to the stigmatic injury the child plaintiff will suffer. Additionally, that plaintiff – an Atheist who wishes to enjoy the administration of the oath without sustaining a slap in the face to her own religious beliefs – will suffer that assault directly from the Chief Justice's lips.

The causal connection related to the clergy Defendants (i.e., Defendants Warren and Lowery) are likewise irrefutable.

The remaining defendants are also involved in the causation of the Plaintiff's injury. Defendants Emmett Beliveau and the PIC serve "to carry out the functions and activities connected with the inauguration." Articles of Incorporation, Article III (Document 12-2 at 3). Defendants Senator Feinstein and JCCIC are "authorized to utilize appropriate equipment and the services of appropriate personnel of departments and agencies of the Federal Government, under arrangements between the joint committee and the heads of the departments and agencies, in connection with the inaugural proceedings and ceremonies." S. Con. Res. 67, 110th Cong., 2d Sess., 154 Cong. Rec. 21, S820-21 (Feb 8, 2008). See also Fed Opp. (Document 13 at 11) ("[T]he JCCIC makes logistical arrangements for the Inauguration of President-Elect Obama.") Similarly, Defendants Major General Rowe and AFIC "provide assistance with respect to the ceremonies relating to the inauguration of a president, specifically, planning and carrying out

activities relating to security and safety, planning and carrying out ceremonial activities."
Declaration of Thomas L. Groppel (Document 13-8 at 2).

Thus, these Defendants have control of the setting in which Defendants Rev. Warren and
Rev. Lowery will be permitted to speak. Just as it is their duty to prevent bystanders (who do
nothing unconstitutional) from entering onto the inaugural platform, it is their duty to prevent
those who are about to act illegally, in a manner that stigmatizes and otherwise injures millions
of citizens, from having access to that unique locale. Whether or not they are justified in not
carrying out that duty (because the ultimate decisionmaker is the President) is, again, a merits
question, unrelated to the standing issue.

### c.  A favorable decision will readily redress the injury

That an injunction against the Defendants will redress the injury goes without doubt. If
Defendant John Roberts, Jr., is enjoined from altering the constitutionally-prescribed oath (by
adding the "so help me God" language), if Rev. Warren and Rev. Lowery are enjoined from
using the inaugural platform to espouse their sectarian religious doctrine, and if the remaining
Defendants are ordered to prevent access to those clergy – which is what they do to the millions
of other attendees at the ceremony – then this impressionable child plaintiff will not be subjected
to the concrete harms already discussed.

Although the Framers thought it was unnecessary and/or unwise for Presidents to infuse
their oaths of office with any religious ideology, and although the first twenty presidents were
apparently quite comfortable following this nonreligious ideal, Barack Obama has chosen to
append the "so help me God" phrase into his oath on January 20, 2009. Recognizing that Mr.
Obama has Free Exercise rights that might suffice to justify the Establishment Clause violation
that decision entails, Plaintiffs have decided not to challenge the President-elect's choice.

Complaint ¶ 107 (Document 1 at 25). Defendants now not only argue that this choice on the part

of Plaintiffs is legally mandated,[4] but that it somehow extends to allow Defendant Hon. John

Roberts, Jr., to alter the Constitution's text: "Accordingly, an injunction against the Chief Justice

serves only to interfere with the President-Elect's desires regarding his inaugural ceremonies."

Fed Opp. (Document 13 at 21).

This is a complete *non sequitur*. Especially after stressing that the "separation of powers"

doctrine is of such importance that it justifies the abrogation of the fundamental constitutional

right to petition the government through the federal courts, see, e.g., Fed Opp. (Document 13 at

9), the argument that the Chief Justice of the United States should simply roll over and violate

the Constitution in whatever manner the new President desires rings quite hollow. Would the

Chief Justice assist Mr. Obama if he decided to keep all Mexican Americans away from the

premises of "his inaugural ceremonies"? Would he uphold a ban on peaceful protests by gays

over Defendant Rev. Warren's views on marriage? Suppose the new president was in agreement

with the "Father of the American Revolution," believing that "much more is to be dreaded from

the growth of popery in America, than from the Stamp Act or any other acts destructive of civil

rights."[5] If he thus decided to pay homage to that American "history and tradition" of anti-

Catholicism,[6] would Defendant Hon. John Roberts, Jr. "honor the President-Elect's wishes on

that issue," Declaration of Jeffry P. Minear (Document 13-9), and alter the Constitution's

prescribed text to read, "so help me Protestant Christianity"? How is this religious appendage in

any constitutionally-significant manner different from the one planned? "That the intrusion was

---

4 "Plaintiffs concede that President-Elect Obama has the right to affirm his oath with the
concluding phrase "so help me God" when he is sworn in to office." Fed Opp. (Document 13 at
21).
5 McAvoy, Thomas T. A History of the Catholic Church in the United States, (Notre Dame:
London; 1969), p. 387 (quoting Samuel Adams).

in the course of promulgating religion that sought to be civic or nonsectarian, rather than

pertaining to one sect, does not lessen the offense or isolation to the objectors. At best it narrows

their number, at worst, increases their sense of isolation and affront." Lee v. Weisman, 505 U.S.

577, 594 (1992).

Focusing on the alleged impotence of the judiciary to enjoin the President (who, of

course, is not a defendant in this case), Defendants' spend two pages claiming that the courts are

similarly impotent to ensure that those acting under the direction of the other two branches of

government abide by their constitutional duties as well. This is obviously incorrect, as is

demonstrated virtually every Supreme Court term. The judiciary invalidates acts of Congress

fairly regularly.[7] Similarly, as the recent cases involving President Bush's actions at Guantanamo

have shown, executive branch decisions are also subject to judicial supervision. If "a state of war

---

[6] See Complaint Appendix C (Document 1-4).

[7] See, e.g., United States v. Morrison, 529 U.S. 598 (2000) (Congress lacked authority to enact
Violence Against Women Act under the Commerce Clause); Legal Servs. Corp. v. Velazquez,
531 U.S. 533 (2000) (Congress violated First Amendment with Rescissions and Appropriations
Act); Greater New Orleans Broad. Ass'n v. United States, 527 U.S. 173 (1999) (Federal
broadcasting restriction violated First Amendment); Clinton v. City of New York, 524 U.S. 417
(1998) (Line Item Veto Act violated the Constitution's Presentment Clause); City of Boerne v.
Flores, 521 U.S. 507 (1997) (Congress exceeded its powers in passing Religious Freedom
Restoration Act); Printz v. United States, 521 U.S. 898 (1997) (Congress's interim provisions of
Brady Act violated dual sovereignty); United States v. Lopez, 514 U.S. 549 (1995) (Congress
lacked authority to enact Gun-Free School Zones Act under the Commerce Clause); Plaut v.
Spendthrift Farm, 514 U.S. 211(1995) (Congress lacked authority to force judiciary to reopen
case after final judgment issued); United States v. National Treasury Emples. Union, 513 U.S.
454 (1995) (Congress's ban on governmental employees' acceptance of honoraria violated First
Amendment); New York v. United States, 505 U.S. 144 (1992) (Congress violated Tenth
Amendment in passing Radioactive Waste Policy Act); Metropolitan Wash. Airports Auth. v.
Citizens for Abatement of Aircraft Noise, 501 U.S. 252 (1991) (Congress violated separation of
powers doctrine with Airports Act); Bowsher v. Synar, 478 U.S. 714 (1986) (Congress lacked
authority to discharge an "executive" official); INS v. Chadha, 462 U.S. 919 (1983): (Congress
may not employ one-house veto of executive branch decision); United States v. Lovett, 328 U.S.
303, 321 (1946) (Congressional act was bill of attainder); Panama Refining Co. v. Ryan, 293
U.S. 388 (1935) (Congress lacked authority to reopen proceeding after final judgment of court).

is not a blank check for the President when it comes to the rights of the Nation's citizens,"

Hamdi v. Rumsfeld, 542 U.S. 507, 536 (2004), then an inaugural ceremony is surely not one

either. "Whatever power the United States Constitution envisions for the Executive in its

exchanges with other nations or with enemy organizations in times of conflict, it most assuredly

envisions a role for all three branches when individual liberties are at stake." Id. In other words,

although separation of powers is an essential ingredient in our constitutional scheme, denying

citizens the right to judicial review when their constitutional rights are abridged "would turn our

system of checks and balances on its head." Id.

Finally, Defendants Rev. Warren and Rev. Lowery can be enjoined as well. Although they

are private citizens when leading prayer in their own churches, Defendants Warren and Lowery

(like Defendants Beliveau and PIC) will assume the role of governmental actors when they

participate in a purely governmental function in a manner unavailable to any other private

individual or organization:

> Conduct that is formally "private" may become so entwined with
> governmental policies or so impregnated with a governmental
> character as to become subject to the constitutional limitations placed
> upon state action. ... That is to say, when private individuals or groups
> are endowed by the State with powers or functions governmental in
> nature, they become agencies or instrumentalities of the State and
> subject to its constitutional limitations.

Evans v. Newton, 382 U.S. 296, 299 (1966).

The claim raised by Defendants Beliveau and PIC – that they are not government actors –

has been addressed by the Supreme Court. In Lebron v. National Railroad Passenger Corp., 513

U.S. 374, 386 (1995) (after noting "the long history of corporations created and participated in by

the United States for the achievement of governmental objectives"), the Court determined that if an

entity "is, by its very nature, what the Constitution regards as the Government, congressional

pronouncement that it is not such can no more relieve it of its First Amendment restrictions than a similar pronouncement could exempt the Federal Bureau of Investigation from the Fourth Amendment." 513 U.S. at 392. Thus, the Court held that "where, as here, the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the First Amendment."[8]

In view of the foregoing, the impressionable child Plaintiff in this case has met the injury in fact, causation and redressability requirements for standing. Thus, the requirements for a Preliminary Injunction can now be reconsidered in light of the arguments raised by Defendants.

### III. The requirements for a Preliminary Injunction have been met

For consistency, Plaintiffs will analyze the requirement in the order taken by Defendants.

#### a. If the Principles underlying the Constitution are following, Plaintiffs cannot but succeed on the merits

##### i. Spatchcocking "so help me God" into the oath and having chaplains engage in inaugural prayer violate every Supreme Court test

Usually, which of the myriad tests proffered by the Supreme Court for Establishment Clause cases dictates the outcome of the litigation. In this case, the choice of test does not matter. Under each, Plaintiffs prevail.

Perhaps the most enduring principle in this legal arena is the neutrality principle:

---

[8] The "directors" clause is of no particular relevance to the issue at hand.

The touchstone for our analysis is the principle that the "First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion."

McCreary County v. ACLU, 545 U.S. 844, 860 (2005) (string citation omitted). See also Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction Appendix A (Document 4-2), providing dicta from 35 separate Supreme Court majority opinions. It is impossible to honestly contend that – as between belief in God ("religion") and disbelief in God ("nonreligion") – the government is being neutral when the Chief Justice of the United States, with no authority whatsoever, alters the oath textually demanded by the Constitution ("Before he enter on the Execution of his Office, **he shall take the following Oath or Affirmation**." Article II, Section 1, clause 8 (emphasis added)), so that it includes the words, "so help me God." It is similarly impossible to honestly contend that giving two Christian ministers unique access to the inaugural dais to lead the audience in prayer to God is neutral as well.

Lemon's purpose prong is violated. Whatever the solemnity, expression of confidence, sense of hope or similar admirable trait sought to be brought to the inaugural ceremony, the fact is that it can be done without bringing in an exclusionary religious viewpoint. The program provided by Defendants – with music, poetry and (above all) the recitation of the Constitutionally-prescribed presidential oath of office – accomplishes these ends. The decision to add prayers to God, therefore, was made to include some further element. And what element could that possibly be but the purely religious notion that belief in God is another means of yielding those desired trappings ... a notion that Plaintiffs absolutely dispute.

Lemon's effects test and/or the endorsement test follow from this illicit religious purpose. As a result, as Plaintiffs allege, government "sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents

that they are insiders, favored members of the political community." <u>Lynch v. Donnelly</u>, 465 U.S. 668, 688 (1984) (O'Connor, J., concurring).

The impressionable child plaintiff in this case, surrounded by formality, control and authority that would dwarf to the point of obscurity the most elaborate high school graduation,[9] who will need to spend perhaps hours in line to pass through security checkpoints,[10] and will end up surrounded by armed police officers, military officials and numerous other guards and officials, is coerced to a degree far exceeding that in <u>Lee v. Weisman</u>. In fact, without her parents for support, Declaration of Michael Newdow accompanying this Reply, the pressure from those surroundings will be immense.

### ii. Besides having questionable continuing validity, <u>Marsh</u> is inapt

The only possible way that Plaintiffs will not prevail on the merits of this case is if the Court chooses to apply <u>Marsh v. Chambers</u>, 463 U.S. 783 (1983), rather than <u>Lee v. Weisman</u>, as mentioned in the Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction (Document 4). Plaintiffs have already demonstrated why <u>Lee</u> is the more apt case. Id. (Document 4 at 22-25.) More importantly, <u>Marsh</u> was a completely unprincipled opinion, that was "directly subversive of the principle of equality at the heart of the [Constitution]." <u>Loving v. Virginia</u>, 388 U.S. 1, 12 (1967). As previously mentioned, its holding is totally incompatible with a subsequent

---

[9] As Defendant AFIC points out, it is from the armed forces of the most powerful nation on earth that "marching units, marching bands, color guards, salute batteries and honor cordons, which render appropriate ceremonial honors to the Commander-in-Chief," Declaration of Thomas L. Groppel (Document 13-8 at 2) are provided. Three formal committees are set up to coordinate the event, which is watched by tens, if not hundreds, of millions of people across the globe. Surely, in terms of formality, control, orchestration, grandeur, etc., a high school graduation is not even comparable.

[10] "All persons attending the inaugural swearing-in ceremonies should be prepared to wait in long lines to be screened through security, and spend many hours outdoors, both before the event and for the length of time it may take for people to leave the Capitol grounds following the end

Supreme Court majority opinion. "[T]he religious liberty protected by the Constitution is abridged when the State affirmatively sponsors the particular religious practice of prayer." <u>Santa Fe Independent School District v. Doe</u>, 530 U.S. 290, 313 (2000).

Some comment regarding the Defendants' allusions to <u>Marsh</u> are warranted. First, Chief Justice Burger's reference to the fact that "Members of the First Congress voted to appoint and to pay a Chaplain for each House," 463 U.S. at 790, is quite misleading. The bill voted on by those members was not just for chaplains. It was to pay the salaries of all congressional employees … including themselves. 1 Annals of Cong. 891 (1789). Certainly one can imagine the hesitancy on the part of an elected official then (as today) to raise a challenge to single out chaplains from a bill paying everyone's salary. That's quite different from passing a bill that only serves that purpose.

Second, it is always possible to characterize a law "directly subversive of the principle of equality" as being "a tolerable acknowledgment of beliefs widely held among the people of this country." 463 U.S. at 792. It was a "tolerable acknowledgement" of such beliefs that allowed the government to keep women from the legal profession, <u>Bradwell v. State</u>, 83 U.S. 130 (1873), "separate but equal" railroad cars, <u>Plessy v. Ferguson</u>, 163 U.S. 537 (1896), and antimiscegenation. <u>Loving v. Virginia</u>, 388 U.S. 1 (1967).

Although in <u>Marsh</u> "the Supreme Court did not draw any distinction between legislative prayer and prayer (and other references to God) by the Executive or Judicial Branches," Fed Opp. (Document 13 at 25), it did do so (implicitly, at least) in <u>Lee</u>. There, again as discussed in Plaintiffs' Memorandum (Document 4 at 22-25), the Court noted how the analysis must be altered for children, formality, peer pressure, etc., not to mention the duration of the practice.

---

of the ceremonies." Accessed on January 10, 2009 at
http://inaugural.senate.gov/media/releases/release-010609-secondadvisory.cfm.

Along these lines, Defendants' assertions that "Inaugural prayer, like legislative prayer, originated at the Founding and has continued to this day," Fed Opp. (Document 13 at 26) is less than forthright. The prayer at the first inauguration took place after the ceremony, in a separate location. Plaintiffs have never suggested that Barack Obama – along with the Chief Justice and anyone else of his choosing – should not be allowed to walk to some church after his oath has been taken, and worship God to his heart's content. That was what occurred at George Washington's inauguration. As far as the inaugural prayer having "continued to this day," the fact remains that the only inaugural prayer for the 148 years between 1789 and 1937 took place in the Senate Chamber, not only out of the sight of the public, but out of the sight of the President! The history is quite different from that of the legislative prayers approved in Marsh.

As far as the "prayer by the Presidents themselves," Fed Opp. (Document 13 at 27), no one is likely to be confused by the fact that such prayer – as is the case for the rest of his inaugural address – is purely the personal expression of the individual serving as president. To reference such personal religious references is to demonstrate a lack of understanding of the gravamen of the Complaint.

The Defendants' claim that "Inaugural Prayer Cannot Reasonably Be Understood To Proselytize," Fed Opp. (Document 13 at 28) is no less demonstrative of myopia than the argument that legislative prayer has not been "exploited to ... advance any one ... belief." (Document 13 at 28, citing Marsh, 463 U.S. at 794-95.) The prayers uniformly begin, "Let us pray." See, e.g., Plaintiff's Memorandum (Document 4 at 25 (n.20)). And the belief that there exists a God is "one ... belief" that is advanced with every one of these constitutional violations. Defendants corroborate this, themselves: "'[T]he act of praying to a supreme power assumes the existence of that supreme

power.' *Snyder v. Murray City Corp.*, 159 F.3d 1227, 1234 n.10 (10th Cir. 1998) (en banc).'" Fed Opp. (Document 13 at 30).

Defendants' claim that "the coercion analysis applied in <u>Lee</u> and <u>Santa Fe</u> is properly confined to the public school context, and thus has no application here," Fed Opp. (Document 13 at 31). This is a very crabbed reading of those cases. Although they took place in the public school context, the point was that government was imposing its will on children. To limit that violation to the public school context is to withdraw the Constitution's protections from all others.

Dicta such as "'[a] prayer may serve to dignify or to memorialize a public occasion,'" Fed Opp. (Document 13 at 34, citing <u>Chaudhuri v. Tennessee</u>, 130 F.3d 232, 236 (6th Cir. 1997), cert. denied, 523 U.S. 1024 (1998) misses the entire point of the Religion Clauses. As the Supreme Court has stated, "[T]he tenets of one man may seem the rankest error to his neighbor." <u>Cantwell v. Connecticut</u>, 310 U.S. 296, 310 (1940); "[W]hat is one man's comfort and inspiration is another's jest and scorn." <u>West Virginia Board of Education v. Barnette</u>, 319 U.S. 624, 633 (1943). Once more, to Plaintiffs, prayer to God does not dignify; it ridicules. It does not memorialize; it shames. More importantly, the views expressed by the <u>Chaudhuri</u> Court show no respect for these latter views, which is what the Establishment Clause seeks to preclude.

This sort of failure to appreciate the value of Atheistic belief may well have been appropriate fifty years ago, when "atheistic communism" was being hissed in conversations throughout Congress and elsewhere. Thus, one can excuse statements such as a "a 'fastidious atheist or agnostic could even object to the supplications with which the Court opens each session: "God save the United States and this Honorable Court."'" Fed Opp. (Document 13 at 39). But today, such a statement makes no sense. Would it be a "fastidious" woman objecting to "May the male gender save the United States and this Honorable Court"? A "fastidious" person of color objecting to "May

Caucasians save the United States and this Honorable Court"? Would that individual really find those words "patriotic and ceremonial," Fed Opp. (Document 13 at 40), especially in conjunction with "one Nation under Caucasians" in the Pledge, "In the White Race We Trust" as our Motto, and "And this be our motto "In White people is our trust" as our National Anthem?

### b. That Plaintiffs will suffer irreparable harm is essentially acknowledged by Defendants

Defendants simply state that the clear command of <u>Chaplaincy of Full Gospel Churches v. England</u>, 454 F.3d 290, 303 (D.C. Cir. 2006) – that being a victim of an Establishment Clause violation equates to suffering an irreparable harm – is inapplicable because Plaintiffs lack standing. Inasmuch as this latter claim is incorrect, Plaintiffs have, under <u>Chaplaincy</u>, demonstrated an irreparable harm.

### c. No cognizable injury to others would accrue with the grant of the Preliminary Injunction

Despite Defendants claims to the contrary, Defendants Rev. Warren and Rev. Lowery have no Free Speech rights when they are agents of the government, acting in violation of the Establishment Clause. That is the whole point of that clause: "While the Free Exercise Clause clearly prohibits the use of state action to deny the rights of free exercise to anyone, it has never meant that a majority could use the machinery of the State to practice its beliefs." <u>Abington School District v. Schempp</u>, 374 U.S. 203, 226 (1963). That is why Rabbi Gutterman had no claim in <u>Lee v. Weisman</u>. Similarly, the injunction would not injure the President-Elect's own interests in having a prayer recited on his behalf at his inauguration, any more that an injunction prohibiting his agents from illegally wiretapping the college students who live nearby, or from stealing pamphlets protesting his views on abortion would injure his interests to maintain public

security and serenity. He has no right to have a prayer recited, anymore than Robert E. Lee, the principal in Lee v. Weisman, had such a right.

The argument that "the preliminary injunction that plaintiffs seek would essentially grant them the ultimate relief they seek in this case with respect to the upcoming inauguration," Fed Opp. (Document 13 at 44), cuts both ways. If the injunction is denied, then Plaintiffs lose the relief sought for all time ("with respect to the upcoming inauguration").

That "Mr. Newdow and his co-plaintiffs could have filed this suit well in advance of the scheduled inauguration," Fed Opp. (Document 13 at 45), misses two important points. The first is that preparing for filing a lawsuit such as this takes an inordinate amount of time. The second is that Plaintiffs had hoped that Barack Obama, as a member of a minority class who must surely be aware of how excuses have been used throughout this nation's history to perpetrate activities "subversive of the principle of equality," would have put an end to such a blatant example of prejudice and hypocrisy. Especially when, on December 10, 2008, he placed on his website that "we rise or fall as one nation and one people,"[11] and "[t]hat sense of unity and shared purpose is what this Inauguration will reflect,"[12] Plaintiffs had the impression that such a lawsuit would not be necessary.

### d. The requested injunction would serve the public interest

The public interest is in having the Constitution – and its core principle of equality – upheld.

### CONCLUSION

---

[11] Accessed on December 11, 2008 at
http://www.pic2009.org/pressroom/entry/theme_and_preliminary_information.
[12] Id.

Plaintiffs have standing and they will prevail in this case if the Supreme Court's instructions – and the Constitution's principles – are followed. The Preliminary Injunction should issue, preventing the Chief Justice from altering the constitutionally-prescribed text, and the Defendants from allowing any clergy-led prayers from the inaugural platform.

Respectfully submitted this 10th day of January, 2009,


/s/ - Michael Newdow                          /s/ - Robert V. Ritter

Michael Newdow                                Robert V. Ritter
*In pro per* and *pro hac vice*               DC Bar #414030
PO Box 233345                                 AHA – 1777 T Street, NW
Sacramento, CA  95823                         Washington, DC  20009

(916) 427-6669                                (202) 238-9088
NewdowLaw@gmail.com                           BRitter@americanhumanist.org

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**Civil Action No. 1:08-cv-02248-RBW**

**Newdow v. Roberts**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2009, I served copies of:

**(1) PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSES TO PLAINTIFFS'
     MOTION FOR PRELIMINARY INJUNCTION**
**(2) DECLARATION OF MICHAEL NEWDOW**

upon the following individuals and entities by placing them in the United States mail.

Rev. Richard D. Warren
(Home address under seal)

Rev. Joseph E. Lowery
(Home address under seal)


Additionally, these documents were electronically filed with the Clerk of the United States

District Court for the District of Columbia by using the CM/ECF system.


I am at least 18 years of age and not a party to the cause.


Signature:    _____    January _____, 2009


Printed Name:    _____

Street Address:    _____

City, State & Zip:    _____

Phone:    _____