# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL NEWDOW, <u>et al.</u>, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 08-2248 (RBW) |
| HON. JOHN ROBERTS, JR., <u>et al.</u>, | ) |
| Defendants. | ) |

## FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFFS' RESPONSE TO THE COURT'S SHOW-CAUSE ORDER REGARDING STANDING AND ISSUE PRECLUSION

MICHAEL F. HERTZ
Acting Assistant Attorney General

JAMES J. GILLIGAN
Assistant Director

BRAD P. ROSENBERG
ERIC B. BECKENHAUER
Trial Attorneys
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 514-3374
Fax: (202) 616-8460
brad.rosenberg@usdoj.gov

Counsel for the Federal Defendants

**TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      PLAINTIFFS LACK STANDING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1.      Plaintiffs Have Not Suffered a Cognizable "Injury in Fact". . . . . . . . . . . . . . . . . 2

        2.      Plaintiffs' Injury is Not "Actual or Imminent"; it is "Conjectural or
                Hypothetical". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        3.      Plaintiffs' Claims Are Not Traceable to the Defendants and Are Not
                Redressable By This Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.     NEWDOW'S CLAIMS ARE PRECLUDED AS TO INAUGURAL PRAYER. . . . . . 10

        1.      Newdow Alleges No "New" Injury That Would Cure the Jurisdictional
                Defects Found in <u>Newdow I</u> and <u>Newdow II</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        2.      There are No New Factual Allegations That Can Salvage Mr. Newdow's
                Claims.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        3.      There Has Been No Relevant Change in the Law... . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**INTRODUCTION**

Plaintiffs' Response to Order to Show Cause #1 (Dkt. No. 51, 02/23/2009) ("Response") fails to demonstrate why this Court should not (1) dismiss this case for lack of standing, and (2) preclude plaintiff Newdow from re-litigating (once again) his claims relating to inaugural prayer. The federal defendants[1] have already extensively briefed plaintiffs' lack of standing. See Federal Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction, Dkt. No. 13 (01/08/2009). Rather than repeat all of those arguments here, the federal defendants rely upon, and incorporate by reference, their previous briefing.

Nonetheless, the federal defendants wish to briefly address several of plaintiffs' central contentions. Notwithstanding their assertions to the contrary, plaintiffs have not suffered an "injury in fact" sufficient to confer standing. Any such injury is not "actual or imminent" but instead is "conjectural or hypothetical," and plaintiffs' claims are neither traceable to the defendants here nor are they redressable. Moreover, plaintiff Newdow is barred by the doctrine of issue preclusion from re-litigating his claims involving inaugural prayer, as the "precondition requisite" requirement is inapplicable. There has been no material change of facts since Mr. Newdow's prior litigation attempts, and there has been no change in controlling law that would allow Mr. Newdow to re-litigate his claims. For these reasons, as set forth in more detail below, this Court should dismiss this case for lack of standing.[2]

---

[1] The federal defendants are the Hon. John Roberts, Jr.; the Joint Congressional Committee on Inaugural Ceremonies and its Chairperson, Senator Dianne Feinstein; and the Armed Forces Inaugural Committee and its Chairperson, Major General Richard J. Rowe, Jr.

[2] This response does not address the separate question of mootness, or any of the allegations contained in plaintiffs' proposed First Amended Complaint. See Plaintiffs' Motion for Leave to Submit First Amended Complaint, Dkt. No. 66 (03/10/2009).

# ARGUMENT

## I. PLAINTIFFS LACK STANDING.

As an initial matter, plaintiffs still fail to distinguish this case from Newdow v. Bush, 391 F. Supp. 2d 95 (D.D.C. 2005) ("Newdow II"). In that case, Judge Bates found that plaintiff Newdow lacked standing to challenge inaugural prayer:

> Here, Newdow lacks any of the indicia of a personal connection found in other prayer or public-display cases. Certainly the Presidential Inauguration is a national event, but it is only held once every four years. In order to come into contact with the allegedly offensive prayers, Newdow must either watch it on television or make a special trip to Washington to observe the prayers in person. He can also avoid the prayers by not watching the television, or by not making the trip to Washington. But, under either scenario, he does not have the necessary personal connection to establish standing. Newdow does not come into regular contact with the inaugural prayers, nor is he forced to change his typical routine to avoid them. . . . Hence, without a personal connection to the inauguration that would make his injuries particularized and concrete, Newdow's alleged injuries — general offense and outsider status — are akin to the psychological injuries occurring from the observation of offensive conduct that the Supreme Court in Valley Forge deemed insufficient to establish an injury-in-fact.

Newdow II, 391 F. Supp. 2d at 104. Judge Bates's well-reasoned standing analysis applies equally to plaintiffs' allegations regarding the inaugural oath as to inaugural prayers. Because none of plaintiffs' arguments presented in response to this Court's show-cause order upsets that reasoning, it should be followed here.

### 1. Plaintiffs Have Not Suffered a Cognizable "Injury in Fact."

Plaintiffs assert that they have been "personally and individually injured because each may personally and individually enjoy the 'transcendent ritual of America's democracy' only at the cost of having to personally and individually endure the governmental espousal of what they, personally and individually, find to be offensive, purely religious dogma." Response at 5, Dkt. 51 at 11. That assertion does nothing to distinguish this case from Newdow's 2005 litigation

attempt.  See Newdow II, 391 F. Supp. 2d at 95 ("Newdow's Complaint alleges that he will be offended by the religious prayers at the inauguration and that he will be made to feel like an outsider."). It also does not allege a cognizable injury-in-fact.  As the Supreme Court has noted, the "psychological consequence presumably produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing under Article III, even though the disagreement is phrased in constitutional terms." Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 485-86 (1982); accord Allen v. Wright, 468 U.S. 737, 755-56 (1984) ("abstract stigmatic injury" insufficient by itself to create Article III injury in fact); Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 223 n.13 (1974) ("abstract injury in nonobservance of the Constitution" insufficient to confer Article III injury).  Nobody can doubt Mr. Newdow's keen interest in the separation of church and state;[3] as this Court is likely aware, Mr. Newdow is no stranger to Establishment Clause litigation. Such an interest in the Establishment Clause generally, or even presidential inaugurations particularly, does not, however, provide plaintiffs with standing here.

Plaintiffs attempt to distinguish Valley Forge by arguing that the Supreme Court did not really mean "observe" when it used the word "observation" in its opinion.  See Response at 6, Dkt. 51 at 12.  Whatever the precise meaning of that word, the "key point" is that plaintiffs "must establish a 'personal connection'" to the 2009 Presidential Inauguration.  Newdow II, 391 F. Supp. 2d at 103 (quoting Suhre v. Haywood County, N.C., 131 F.3d 1083, 1087 (4th Cir. 1997)).

---

[3] Mr. Newdow describes his extensive activities relating to the history of the use of the phrase "so help me God" in Presidential oaths in an attempt to establish a "personal connection" to the conduct challenged in this case.  See Response at 35-38, Dkt. 51 at 41-44.  But Article III injury "is not measured by the intensity of the litigant's interest or the fervor of his advocacy." Valley Forge, 454 U.S. at 486.

The two cases that plaintiffs cite to distinguish Valley Forge do not change this analysis. In Animal Legal Defense Fund v. Glickman, the one plaintiff who was found to have standing "repeatedly visit[ed] a particular animal exhibition to observe particular animals there." 154 F.3d 426, 432 (D.C. Cir. 1998) (en banc); see also id. at 429 (noting that plaintiff visited the animal exhibition at least nine times between May 1995 and June 1996). Moreover, that case turned on a clear line of authority recognizing a "cognizable interest in view[ing] animals free from . . . inhumane treatment." Id. (citations and internal quotation marks omitted). To that end, "[t]he Supreme Court has repeatedly made clear that injury to an aesthetic interest in the observation of animals is sufficient to satisfy the demands of Article III standing." Id. By contrast, the Supreme Court has made clear that, in the Establishment Clause context, one must demonstrate more than "psychic injury." Valley Forge, 454 U.S. at 485-86.

Plaintiffs also cite In re Navy Chaplaincy for the proposition that standing exists whenever religious speech is observed by the plaintiffs. See Response at 6, Dkt. 51 at 12. To the contrary, in Navy Chaplaincy the D.C. Circuit expressly rejected the plaintiffs' claim of injury from "being subjected to [a] 'message' of religious preference conveyed" by the government's actions, reiterating that "mere personal offense to government action does not give rise to standing to sue." In re Navy Chaplaincy, 534 F.3d 756, 763 (D.C. Cir. 2008) (citations omitted), petition for cert. filed (Feb. 13, 2009) (No. 08-1057). The court stressed that to accord standing to anyone who becomes aware of or is offended by an allegedly unconstitutional "message" would "eviscerate well-settled standing limitations." Id. at 764.

Plaintiffs refer to a series of cases in which standing has "accrued" where "plaintiffs personally and individually observed religious displays." Response at 7, Dkt. 51 at 13 (citing

4

McCreary County v. ACLU, 545 U.S. 844 (2005); Van Orden v. Perry, 545 U.S. 677 (2005); Allegheny County v. Greater Pittsburgh ACLU, 492 U.S. 573 (1989); Lynch v. Donnelly, 465 U.S. 668 (1984)). None of these cases discusses standing. As for "the five Supreme Court cases involving government-endorsed prayer" that plaintiffs cite, Response at 7, Dkt. 51 at 13, three of the five similarly do not address standing. See Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290 (2000); Wallace v. Jaffree, 472 U.S. 38 (1985); Engel v. Vitale, 370 U.S. 421 (1962). The fourth, Marsh v. Chambers, stated in a footnote that the plaintiff, who was a member of the Nebraska legislature and a taxpayer, had standing to challenge prayers in the Nebraska legislature. 463 U.S. 783, 786 n.4 (1983). And in the fifth, Lee v. Weisman, the Court merely noted in passing that there was a "live and justiciable controversy" as the plaintiff student had standing to challenge prayers at her own graduation. 505 U.S. 577, 584 (1992). As the D.C. Circuit has recently reiterated in rejecting reliance on six of the nine cases plaintiffs cite (including Marsh and Lee), "[i]t is a well-established rule that cases in which jurisdiction is assumed sub silentio are not binding for the proposition that jurisdiction exists." In re Navy Chaplaincy, 534 F.3d at 764 (quoting John Doe, Inc. v. DEA, 484 F.3d 561, 569 n.5 (D.C. Cir. 2007) (internal quotation marks omitted)).

### 2. Plaintiffs' Injury is Not "Actual or Imminent"; it is "Conjectural or Hypothetical."

An indispensable element of standing is an "actual or imminent injury." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Plaintiffs argue that they have suffered an "actual" injury (presumably on January 20, 2009), and thus, "imminence is not required." See Response at 8, Dkt. 51 at 14. Even if plaintiffs had suffered a "concrete and particularized" injury — as discussed above, they have not — any such "actual" injury arising from the 2009

Inauguration is not now redressable by the Court: This Court has already denied plaintiffs' request for a preliminary injunction regarding the 2009 Inauguration, and "[p]rospective relief, like a declaratory judgment, will not address [plaintiffs'] past injuries." Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec., 527 F. Supp. 2d 101, 107 n.7 (2007).

Plaintiffs, perhaps recognizing that they must rely upon the "imminent injury" prong, look to future inaugurations to assert that their injury need only occur at "'some fixed period of time in the future, not that it happen in the colloquial sense of soon or precisely within a certain number of days, weeks, or months.'" Response at 9, Dkt. 51 at 15 (quoting Florida State Conf. of N.A.A.C.P. v. Browning, 522 F.3d 1153, 1161 (11th Cir. 2008)). But the court in Florida State Conference of N.A.A.C.P. addressed an injury that was likely to occur within a matter of months; the 2013 Inauguration, of course, is nearly four years away. See id. And the Supreme Court has held that an alleged injury that is to take place years in the future is simply "too remote temporally to satisfy Article III standing." McConnell v. Fed. Election Comm'n, 540 U.S. 93, 226 (2003) (finding plaintiffs lacked standing to challenge statute that would not affect them until 2008) (citing Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) ("A threatened injury must be certainly impending to constitute an injury in fact" (internal quotation marks and citations omitted)); City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (plaintiff seeking injunctive relief must show he is "'immediately in danger of sustaining some direct injury' as [a] result" of the challenged conduct). Under McConnell, any alleged injury regarding the upcoming 2013 Inauguration simply is not "imminent."

Moreover, an injury must not be "conjectural or hypothetical." Lujan, 504 U.S. at 560 (citation and quotation marks omitted). Plaintiffs assert that for the past 70 years, "all Chief

6

Justices have <u>always</u> added 'so help me God' to the text of the Constitutional oath, and <u>all</u> inaugural committees have <u>always</u> included clergy-led prayers." Response at 9, Dkt. 51 at 15. But little is certain about the Inauguration expected to take place in 2013. Nobody knows who will be inaugurated, much less whether that person will want clergy-led prayer at his or her Inauguration. As Judge Bates noted, "[t]his Court cannot now rule on the constitutionality of prayers yet unspoken at future inaugurations of Presidents who will make their own assessments and choices with respect to the inclusion of prayer." <u>Newdow II</u>, 391 F. Supp. 2d at 108; <u>see also</u> <u>Lyons</u>, 461 U.S. at 105-10; <u>North Carolina v. Rice</u>, 404 U.S. 244, 246 (1971) ("[T]o be cognizable in a federal court, a suit 'must . . . be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'").[4] Nor does anyone know whether the person to be inaugurated in 2013 will wish to conclude the oath of office with the traditional phrase "so help me God." As the Federal Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction made clear, it is entirely within the President's discretion to decide whether he or she wishes to conclude the oath with that affirmation. <u>See</u> Declaration of Jeffrey P. Minear (Dkt 13-9, attached to the Federal Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction as Ex. 8) (noting that the Chief Justice solicited the President-Elect's wishes regarding the inclusion of "so help me God").

    Finally, plaintiffs assert that any argument that their claims are speculative somehow "guts" the defendants' argument that inaugural prayer and the use of the phrase "so help me

---

[4] Judge Bates also noted that an inquiry would be necessary as to the words used in any prayers. <u>Newdow II</u>, 391 F. Supp. 2d at 108. At this juncture, this Court cannot know whether there will be any inaugural prayers in 2013, much less what the words for those prayers would be.

God" is justified by history and tradition. See Response at 9 n.5, Dkt. 51 at 15 n.5. That is nonsensical. History and tradition provide a justification for including clergy-led prayers and the phrase "so help me God" in inaugural ceremonies, but — as the Minear declaration makes clear — do not bind this or future Presidents to those traditions.

### 3. Plaintiffs' Claims Are Not Traceable to the Defendants and Are Not Redressable By This Court.

Plaintiffs assert that there is a "causal connection" between plaintiffs' "injuries" and the defendants' actions, Response at 10, Dkt. 51 at 16, and that their "harms . . . will disappear" should this Court enjoin the Chief Justice and the other defendants, Response at 11, Dkt. 51 at 17. Those arguments ignore that it is the President "who has the authority to have these words ["so help me God"] uttered at the inauguration." Hearing Tr. at 68:24-25; see also Newdow II, 391 F. Supp. 2d at 104 ("the President himself has the exclusive decision-making authority as to whether there will be religious prayer at an inauguration"). The defendants in the 2005 and 2009 lawsuits are identical in all material respects, save that plaintiffs have decided not to name the President as a defendant in the instant lawsuit, and have named different clergy members. Thus, there is no "causal connection" between the plaintiffs' alleged injuries and the conduct of which plaintiffs complain, and their alleged injuries simply are not redressable.

Moreover, and despite the fact that they have not named him as a defendant, plaintiffs fail to come to grips with this Court's inability to enjoin (or issue a declaratory judgment against) the President. Instead, they attempt to short-circuit the issue by arguing that relief against the other defendants is appropriate, and that the President would somehow bind himself by such a judgment. Response at 20-21; Dkt. 51 at 26-27. But "[r]edressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-

inspiring effect of the opinion explaining the exercise of its power." Franklin v. Massachusetts, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in the judgment).

Plaintiffs also set forth the unremarkable proposition that courts routinely review administrative action. Response at 21; Dkt. 51 at 27. That is beside the point. Plaintiffs' case here centers on the decisions of the President himself as to how the oath of office is to be administered and whether clergy will be invited to deliver invocations and benedictions. Similarly, plaintiffs' reliance on the Court's conclusion in Franklin v. Massachusetts that declaratory relief against the Secretary of Commerce — as opposed to the President himself — would redress plaintiffs' injuries is misplaced. See Response at 20, Dkt. 51 at 26 (citing Franklin, 505 U.S. at 803[5]). Unlike Franklin, Judge Bates (and this Court at the preliminary injunction stage) have determined that, under the circumstances of this case, relief against the named defendants cannot redress plaintiffs' injuries. See Newdow II, 391 F. Supp. 2d at 104-07; Hearing Tr. 67:22-69:6.[6]

Plaintiffs also devote a substantial portion of their brief to advocating that this Court has the authority to enjoin the Chief Justice. This Court need not — and should not — reach the

---

[5] Even that conclusion was not without controversy. As Justice Scalia noted,

> I do not think that for purposes of the Article III redressability requirement we are ever entitled to assume, no matter how objectively reasonable the assumption may be, that the President (or, for that matter, any official of the Executive or Legislative Branches), in performing a function that is not wholly ministerial, will follow the advice of a subordinate official.

Franklin, 505 U.S. at 824-25 (Scalia, J., concurring in part and concurring in the judgment).

[6] Plaintiffs also cite Clinton v. City of New York, but that case involved a challenge to a statute (the Line Item Veto Act) and particular cancellations thereunder; plaintiffs did not seek injunctive relief against the President. 524 U.S. 417, 425 n.9 (1998).

merits of that question, since any claims vis-a-vis the Chief Justice simply are not redressable.

As the federal defendants have already noted, if this Court were to have issued an injunction against the Chief Justice, the President merely could have exercised his prerogative to invite someone else to administer an oath that is followed by the phrase "so help me God." The same, of course, is true for future Inaugurations.[7]

## II. NEWDOW'S CLAIMS ARE PRECLUDED AS TO INAUGURAL PRAYER.

As a threshold matter, the federal defendants do not dispute that issue preclusion does not apply to plaintiffs' claims regarding the use of the phrase, "so help me God." Nor do the federal defendants argue that issue preclusion applies to the non-Newdow plaintiffs. Mr. Newdow, however, is precluded from re-litigating his claims involving inaugural prayer.

### 1. Newdow Alleges No "New" Injury That Would Cure the Jurisdictional Defects Found in Newdow I and Newdow II.

Mr. Newdow argues that Judge Bates's 2005 opinion put him on notice "for the first time" that to have standing, he would need to demonstrate that he is a "frequent or regular attendee . . . at Presidential Inaugurations." Response at 29, Dkt. 51 at 35. Mr. Newdow also asserts that such evidence "now exists" because, four years later, he has watched one additional inauguration. Id. However, there is nothing new about the injury that Mr. Newdow asserts here: that inaugural prayer offends him and makes him feel like an outsider, regardless of whether he observes it or avoids it. These are precisely the same injuries previously found insufficient to

---

[7] Plaintiffs devote considerable space in their brief to their argument that they are injured thorough the Chief Justice's administration of the oath with the phrase, "so help me God," even though they "cherish[ ]" religious expressions from private individuals, including in the context of the President exercising his First Amendment Rights. See Response at 16, Dkt. 51 at 22. But as already noted, the Chief Justice merely administered the oath in accordance with the President's wishes. That is entirely consistent with plaintiffs' view that the President has a First Amendment right to conclude his oath by stating, "so help me God."

ground standing, and they do not cure the jurisdictional defects in Newdow I and Newdow II.

In Newdow I, Mr. Newdow argued that he had standing based on his viewing of the 2001 Inauguration on television and the fact that the use of clergy-led prayer made him feel like an "outsider." The Court of Appeals for the Ninth Circuit affirmed the district court's dismissal of Mr. Newdow's case for lack of standing, and specifically cited Valley Forge for the proposition that Mr. Newdow "lacks standing to bring this action because he does not allege a sufficiently concrete and specific injury." Newdow v. Bush, 89 Fed. Appx. 624, 625, 2004 WL 334438, at **1 (9th Cir. Feb. 17, 2004).

Four years later, in Newdow II, Mr. Newdow argued that he had standing based on his decision to forego attending the 2005 Inauguration because of the inclusion of clergy-led prayer. Judge Bates characterized Mr. Newdow's injuries as "essentially the same" as in Newdow I — namely, that "inclusion of religious prayer will make [Newdow] feel like an outsider." Newdow II, 391 F. Supp. 2d at 100. As here, Mr. Newdow argued that he had "cured" a prior jurisdictional defect by alleging a "new" injury — namely, that the allegedly offensive conduct would force him to forego attending the 2005 Inauguration. But Judge Bates rejected that argument, finding "no relevant distinction" between "watching an inauguration on TV, physically attending it, or forgoing it." Id. at 100 n.2 & 101. On that basis, Judge Bates concluded that Mr. Newdow's "newly alleged injuries" failed to satisfy the "curable defect" exception and, therefore, held that Mr. Newdow was barred from re-litigating his standing. Id. at 101. Nonetheless, and as noted above, Judge Bates separately held that Mr. Newdow lacked standing under Valley Forge. See id. at 104.

Here, as in Newdow II, there is "no relevant distinction" between the injuries that Mr. Newdow alleges in this case and in his prior challenges to inaugural prayer. See Newdow II, 391

F. Supp. 2d at 101. At bottom, Mr. Newdow's alleged injuries resulting from watching the quadrennial inauguration, whether in person or on television, "are akin to the psychological injuries occurring from the observation of offensive conduct that the Supreme Court in <u>Valley Forge</u> deemed insufficient to establish an injury-in-fact" for standing purposes. <u>See id.</u> at 104. Two courts of competent jurisdiction have so held, and Mr. Newdow alleges no "new" injury that would cure this defect and justify the re-litigation of his standing claims.

### 2. There are No New Factual Allegations That Can Salvage Mr. Newdow's Claims.

Mr. Newdow cites two "new facts" to justify the re-litigation of his claims. First, Mr. Newdow asserts that Defendant Warren "specifically exhibited an animus toward Atheists such as Newdow." Response at 31, Dkt. 51 at 37. But Mr. Newdow does not cite anything that Mr. Warren said during the 2009 Inauguration; instead, the "animus" to which Mr. Newdow refers allegedly occurred in a public statement that Mr. Warren made months before. <u>See</u> Response at 31, Dkt. 51 at 37 (citing Compl. ¶ 73). This "new fact" has absolutely nothing to do with the 2009 Inauguration.

Second, Mr. Newdow refers to the "minor child" he now asserts he "was accompanying" to the Inauguration. Response at 32, Dkt. 51 at 38. According to Mr. Newdow, he "had a special duty to protect her from offensive religious dogma." <u>Id.</u> As an initial matter, at the preliminary injunction stage, Mr. Newdow indicated that the minor child would travel to Washington and watch the inaugural ceremonies on her own. <u>See</u> Declaration of Michael Newdow, Dkt. 17-2 (01/10/2009) (noting that the minor child "would be traveling alone (with parental permission) from California to Washington, DC" and "[u]nless there is an alteration in plans, will also be alone when she attends the formal inauguration ceremony"); Amended Declaration of Michael

12

Newdow, Dkt. 29 (01/14/2009) ("I plan to escort DoeChild to the entrance of the swearing-in ceremony, and ensure that she is admitted with the ticket that has been secured for her" and "[u]nless there is some alteration in plans, DoeChild will then enter the premises for the swearing-in ceremony, and view the ceremony alone."); Hearing Tr. at 8:13-9:12 (describing intricate procedures and "backup plans" by which the minor child will attend the Inauguration). Moreover, and more importantly, this is not Mr. Newdow's child, and Mr. Newdow does not describe any basis for this "special duty." Even if Mr. Newdow accompanied this child to the Inauguration, that is not a change in a material fact that gives him the right to re-litigate his claims (especially in light of the fact that the minor is a separate plaintiff in this lawsuit).

### 3. There Has Been No Relevant Change in the Law.

Finally, Mr. Newdow cites "a marked change in the legal principles regarding standing" announced in Barnes-Wallace v. City of San Diego, 530 F.3d 776 (9th Cir. 2008). See Response at 32; Dkt. 51 at 38. The decision does nothing of the kind.

First, the "change in law" Mr. Newdow cites occurred in the Ninth Circuit. That decision, of course, is not controlling in this Circuit, and it does not undermine the force of Judge Bates's 2005 opinion, which Mr. Newdow declined to appeal. Cf. Montana v. United States, 440 U.S. 147, 161-62 (1979) (applying "normal rules of preclusion" absent a change in "controlling legal principles").

Second, even as to the Ninth Circuit (and Mr. Newdow's 2001 litigation), Barnes-Wallace does not carry the water in the manner Mr. Newdow describes. According to Mr. Newdow, the significance of Barnes-Wallace is that plaintiffs, who visited park facilities leased to the Boy Scouts of America, had standing to challenge the lease on Establishment Clause grounds based on the Boy Scouts' discrimination toward agnostics, "even though there was no

13

allegation that the plaintiffs would be personally exposed to anything religious at all!" Response at 33, Dkt. 51 at 39 (emphasis omitted). But critical to the court's standing analysis was the "uncontroverted evidence . . . that [plaintiffs] would like to use [the park], but that they avoid doing so," as well as the fact that, because the Boy Scouts "control access to the [park's] facilities," plaintiffs would need to "'go[ ] through' the Boy Scouts and pass[ ] by symbols of its presence and dominion." Barnes-Wallace, 530 F.3d at 784. Moreover, the plaintiffs were residents of the city in which the park was located, thus providing a personal connection that, in the court's view, distinguished the case from Valley Forge. Barnes-Wallace, 530 F.3d at 785. In this regard, Barnes-Wallace is akin to the "religious-display" cases Judge Bates cited for the proposition that a plaintiff must have a "personal connection" to the challenged conduct; only the nature of the "display" is different. See Newdow II, 391 F. Supp. 2d at 103. And it is that very lack of a personal connection to Presidential Inaugurations that deprives plaintiffs of standing, and makes Mr. Newdow's present case indistinguishable from his prior litigation attempts.

## CONCLUSION

For the foregoing reasons, as well as those set forth in our opposition to plaintiffs' motion for a preliminary injunction, this Court should dismiss this case for lack of standing.

Dated: March 11, 2009                    Respectfully submitted,

                                         MICHAEL F. HERTZ
                                         Acting Assistant Attorney General

                                         JAMES J. GILLIGAN
                                         Assistant Director

                                         　/s/ Brad P. Rosenberg
                                         BRAD P. ROSENBERG (DC Bar 467513)
                                         ERIC B. BECKENHAUER (Cal. Bar 237526)
                                         Trial Attorneys
                                         United States Department of Justice
                                         Civil Division
                                         Federal Programs Branch
                                         20 Massachusetts Avenue, N.W.
                                         Washington, D.C.  20001
                                         Tel:  (202) 514-3374
                                         Fax:  (202) 616-8460
                                         brad.rosenberg@usdoj.gov

                                         Counsel for the Federal Defendants